No. 2967

Second Circuit

ROBERTS v. EASON

(May 13, 1927. Opinion and Decree.)
(June 28, 1927. Rehearing Refused.)
(July 13, 1927. Writ of Certiorari and Review Applied for.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Constitutional Law— Par. 26.**

The right of appeal is a constitutional and a valuable one which should always be entertained with favor whenever it exists.

Magendie vs. Constable of First City Court, 4 La. App. 718.

2. **Louisiana Digest—Appeal—Par. 625.**

Where the issue is one of fact, the appellate court will give much weight to the finding of the trial court and will not disturb it unless manifestly erroneous.

Cunningham vs. Middleton, 4 La. App. 643.

3. **Louisiana Digest—Automobiles—Par. 7 —Negligence—Par. 15, 25.**

One who is injured through his own negligence or whose own negligence is either the sole proximate cause or a contributing cause of his injury has no just cause of complaint against another therefor.

Conrad vs. McClintic Marshall Const. Co., 131 La. 562, 59 South. 983; Bardwell vs. Reid, 2 La. App. 309; Borell vs. Cum. Tel. & Tel. Co., 133 La. 630, 63 South. 247.

4. **Louisiana Digest—Automobiles—Par. 6.**

Though it be the general rule of law that the negligence of the driver of an automobile cannot be attributed to one travelling with him, neither occupant of the vehicle can recover when it is shown that the proximate cause of the accident was the failure of both to have seen what each of them could have seen and avoided.

Toups vs. M. L. & T. R. R. & S. S. Co., 4 La. App. 136.

5. **Louisiana Digest—Automobiles—Par. 4a.**

It is the duty of one driving an automobile behind another automobile to so regulate the speed of his car and the distance between it and the car ahead of it as not to collide with a truck parked in the public street in front of him in case the car that he is trailing turns sharply to avoid striking the truck.

Henican vs. Woodman & Baldwin, 1 La. App. 281.

6. **Louisiana Digest—Automobiles—Par. 6, 7—Negligence—Par. 25.**

For the driver of an automobile at night to trail another automobile within a

car's length and at such rate of speed as to prevent such driver from seeing and avoiding a truck parked on the side of the street is such negligence as to bar recovery by the driver of the car or his wife who was riding on the seat with him in case of a collision with the truck.

7. Louisiana Digest—Courts—Par. 60—Automobiles—Par. 4d.

It is the duty of courts to see that ordinances enacted for the safety of the public are rigidly enforced in aid of the remedy for the mischief sought to be guarded against.

Dill vs. Colley, 3 La. App. 305; Broderick vs. Lane Cotton Mills, 1 La. App. 155; Elswirth vs. Eaton, 2 La. App. 363.

8. Louisiana    Digest—Automobiles—Par. 4b, 4d.

Ordinances regulating the parking of vehicles in the public streets must be observed and if an injury results from their violation to one · not at fault he may recover damages from the owner of a truck parked in the public street in violation of a city ordinance.

Ibid. Hudson vs. Jackson Brewing Co., 4 La. App. 549.

9. Louisiana    Digest—Automobiles—Par. 4d.

It is gross negligence for the owner of a truck to allow it to remain parked in the public street of a city in violation of an ordinance of the city for a day and part of two nights without warning lights; and where a collision occurs at night between a passing car and such unlighted truck, one injured in such collision, who is not himself at fault, may recover damages from the owner of the truck.

Ibid.

10. Louisiana    Digest—Automobiles—Par. 4, 4d—Negligence—Par. 15.

Leaving a truck standing in the public highway in the path of passing cars after dark, without warning lights, on a rainy, stormy night, is the proxi-

mate cause of an injury received by one in a collision by one driving an automobile at 12 miles an hour and who only could see twenty feet ahead of him and was unable to stop his car or turn it aside after discovering the obstruction in time to avoid a collision with it.

A. L. R. vol. 37, p. 582; Razycki vs. Yauntic & Green Products Co., 121 Atl. 717.

11. Louisiana    Digest—Automobiles—Par. 4, 4d, 7, 8.

Although one who causes an injury to another in operating an. automobile in violation of a statute is negligent per se, he is not necessarily guilty of gross negligence which will make unavailing the defense of contributory negligence.

A. L. R. vol. 38, p. 1417; Vinton vs. Brown, 203. N. E. 380.

Appeal from the Fourth Judicial District Court of Louisiana, Parish of Ouachita. Hon. John T. Shell, Judge.

Action by Mrs. Barbara Roberts against Frank C. Eason.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Theus, Grisham & Davis, of Monroe, attorneys for plaintiff, appellant.

Hudson, Potts, Bernstein & Sholars, of Monroe, attorneys for defendant, appellees.

STATEMENT OF THE CASE

REYNOLDS, J. These two suits were consolidated for the purpose of trial and only one judgment, which, however, disposed of all the issues presented in both cases, was signed.

In suit No. 2968 L. S. Roberts claimed damages for himself in the sum of $850.75 and for the use and benefit of his minor son, Maurice Roberts, damages in the sum of $1500.00.

In suit No. 2967 Mrs. Barbara Roberts, the wife of L. S. Roberts, claimed damages in the sum of $7500.00

The damages claimed were for injuries alleged to have been received by Mr. Roberts and by Mrs. Roberts and by their minor son, Maurice Roberts, in a collision between an automobile in which they were riding and which was being driven by L. S. Roberts and a truck belonging to Frank C. Eason that was parked in one of the public streets of the city of Monroe, Louisiana, near what is known as "Lovers Lane."

Plaintiffs alleged that the truck remained parked in the public street in violation of a city ordinance for a day and part of two nights and that there were no lights on it at night to warn passing vehicles of its presence. They also allege that they were ignorant of the presence of the truck in the street.

Defendant denied liability and alleged that he had placed a lighted lantern on the truck and that collision was caused by negligent driving on the part of the person who was driving the car in which plaintiffs were riding. He also alleged that he had vainly tried to move the truck out of the street by its own motive power before the accident.

On these issues the case was tried and there was judgment rejecting the demands of L. S. Roberts on his own behalf and rejecting the demands of Mrs. Roberts and awarding judgment in favor of L. S. Roberts for the use and benefit of his minor son, Maurice Roberts, in the sum of $750.00 with legal interest thereon from judicial demand. The costs of the consolidated cases were adjudged one-half against L. S. Roberts and Mrs. Barbara Roberts and one-half against the defendant.

Both plaintiffs and defendant appealed.

Plaintiff L. S. Roberts, for the use and benefit of his minor son, Maurice, answered the appeal and asked that the judgment in favor of his minor son, Maurice Roberts, be increased from $750.00 to $1500.00.

The defendant filed in this court a motion to dismiss the plaintiffs' appeals on the ground that the rendering and signing of one judgment for both cases by the trial court was illegal and also because the trial court had refused, on his application, to render and sign a separate judgment in each case.

## ON MOTION TO DISMISS

Defendant asks that the appeals of L. S. Roberts and Mrs. Barbara Roberts be dismissed for the reasons that only one judgment covering both cases was rendered and signed and because the District Judge refused to render and sign a separate judgment in each case.

The two cases were consolidated for purposes of trial and the trial judge, in his discretion, rendered and signed only one judgment in which he disposed of all the issues involved in both cases.

The demands of Mrs. Barbara Roberts having been rejected and the demands of L. S. Roberts in his own behalf having been rejected also they are clearly entitled to appeal. The Constitution favors the right of appeal.

The demands of the plaintiffs having been regularly adjudicated by a court of competent jurisdiction and a judgment rendered and signed they have a right of appeal therefrom and their only remedy is by appeal.

The motion to dismiss is overruled.

## ON THE MERITS

The facts of these cases are simple and practically all agreed to by both plaintiffs and defendant; the only question in dispute being whether at the time of the collision there was a lighted lantern or other light on defendant's truck, on which point the evidence is conflicting. The trial judge who heard the witnesses testify and observed their manner on the witness stand held that there was no light on the truck at the time of the accident. After carefully reading all of the evidence we are convinced that his finding on this point is correct. And it therefore follows from all of the evidence detailing the facts and circumstances connected with the collision that the defendant is responsible for the injuries sustained by the occupants of plaintiff's car that were not guilty of contributory negligence.

Plaintiffs' son, Maurice Roberts, was of tender age, apparently not over four or five years old, and it is not contended by defendant that he was guilty of contributory negligence. Therefore the judgment of the lower court awarding him $750.00 damages is correct.

The evidence shows that he received painful injuries.

Doctor J. Q. Graves testified:

(Testimony, page 6.)

"Q. Now what were the character of the wounds and suffering of the child Maurice Roberts, the son of Mr. and Mrs. Roberts?

"A. Maurice, the little boy, you have reference to?

"Q. Yes.

"A. Had two wounds on his head along the margin of the hair line, just to the right of the center, one of the wounds. One was about where the midline, or to the left of the midline, about an inch and a half in length, continued down to and including the periosteum. The other was along the margin of the hair line in the right temple. And then he had smaller wounds of lesser importance caused by flying glass in his face and chest; and also a contusion or depression of the nose. For the nose I called Dr. Perot. I didn't take charge of that on account of the fact—

"Q. Doctor Perot specialized in the nose?

"A. Eye, ear, nose and throat, yes, and I referred the nose to Doctor Perot."

(Testimony, page 7.)

"Q. Doctor, this little boy—these scars —they are not permanent in their nature, are they?

"A. Well, yes; they will always remain there.

"Q. Isn't it true that in a very youthful person, such as this little boy, whom I judge to be about five or six years old, a scar of this nature will heal over and gradually disappear?

"A. They will grow smaller; have a contractural power; but never disappear entirely.

"Q. The scars on this boy's head are under the hair?

"A. On the left of the midline it is, but the other is just below the margin of the hair.

"Q. It is true eventually these scars will go away?

"A. Not altogether; they will grow smaller; they will not disappear entirely."

Doctor P. L. Perot testified.

(Testimony, page 13.)

"Q. State to the court, Doctor, what, if anything, was the matter with this child's nose? What trouble you found, if any?

"A. He had a fracture of the left nasal bone, being depressed or sunken; and an elevation of the right nasal bone, projecting upward and outward about an eighth or quarter of an inch. The air passage of the left side of the nose was practically obstructed.

"Q. Did he entirely recover from that injury?

"A. Yes; there may be a little sinking of the nose; I couldn't state; it might have been that way before. But his nose

has recovered as far as the use of the nose is concerned. There may be a little depression in his nose. I didn't see him before this and I couldn't recall whether there was some depression at that time. I don't recall the natural contour of the nose before he had this accident."

This testimony as to the injuries suffered by Maurice Roberts convinces us that the amount allowed him by the trial judge was not excessive; neither do we think it insufficient.

At the time of the accident the plaintiff, L. S. Roberts, was driving his own car and was trailing another car which had a "trailer" linked to it. It was a rainy night and he was moving at a speed of from twelve to fifteen miles an hour. In our opinion these factors strongly contributed to cause the collision.

The car with the "trailer" linked to it that plaintiffs were trailing when it reached defendant's truck swerved to the left and passed the truck wihout difficulty; plaintiffs' car following, collided with the truck.

F. K. Vaughan, called by the plaintiffs, testified:

(Testimony, page 26.)
"Q. State to the court, in your own language, what you saw and what experience you had with that truck parked down there on Lovers Lane.
"A. Well, I don't recall the exact hour. Sometime after supper. My wife and I were going down to Boseo and we came upon that truck on Lovers Lane. I got pretty close to it before I saw it, and I saw it, and I went on and also saw it when I was coming back. The reason I particularly noted it, we heard of the accident the next morning and I recalled having come upon that truck the night before.
"Q. What lights, if any, were on that truck?
"A. I don't recall seeing any.
"Q. What, if anything, attracted your attention to that truck?

"A. Because I drove pretty close to it before I saw it, is what particularly called my attention to it.
"Q. About how far did you get from it before you saw it?
"A. I don't know; thirty or forty feet. Pretty close to it.
"Q. That was down on Lovers Lane, South Grand Street?
"A. Yes, sir; Lovers Lane.
"Q. State to the court just how near you came to having an accident.
"A. Well, I would not say I had a near accident. I drove up as I saw approximately thirty or forty feet before I saw something ahead of me. Naturally I slowed up and drove around it."

Plaintiff L. S. Roberts testified:

(Testimony, page 80.)
"Q. About what rate of speed were you travelling?
"A. I was trailing other cars; I imagine between twelve and fifteen miles an hour.
"Q. Trailing another car?
"A. Yes.
"Q. How far ahead of you was that car?
"A. I imagine about the length of a car.
"Q. What was the first knowledge you had of this truck being parked there?
"A. Just a slight flash when the car ahead of me got out of my sight, turned out, made a sharp turn, and I got a flash, not enough to recognize anything.
"Q. About how close were you to this truck before you saw it?
"A. About a length and a half of the car; perhaps two lengths of the car."

From this evidence it is clear to us that plaintiffs would have been able to see the truck in time to avoid collision between it and their own car had their view of the truck not been obstructed by the car that they were trailing.

Mrs. Barbara Roberts testified:

(Testimony, page 96.)
"Q. Were you awake or asleep when that happened?
"A. Awake.
"Q. Were you looking ahead?
"A. Indeed; I always do.

"Q. What was the first knowledge you had of this truck being parked on the roadside?

"A. Well, we were trailing a car. It was a light car, and this car turned out and Mr. Roberts went to turn out and I just saw something come in front of me, and I don't remember any more.

(Testimony, page 98.)

"Q. Mrs. Roberts, when you are out driving with your husband, sitting on the front seat, you say you always keep looking ahead, watching the road?

"A. I certainly do.

"Q. Why do you do that?

"A. Because I always—I feel I have to look, and with my children I am always on the front seat looking. I always think—it is a mother's fear I suppose.

(Testimony, page 99.)

"Q. You were looking ahead on this occasion?

"A. Trailing this car.

"Q. About how far back?

"A. From here to Judge Theus, trailing back of the car. Maybe a little closer.

\*  \*  \*

"Q. About six feet is it?

"A. Five or six feet. And other times we got closer or further as the cars drove.

"Q. Five or six feet?

"A. Nearer the car, not further back.

"Q. Nearer to the car all the time?

"A. Yes.

"Q. If anything, less than five or six feet?

"A. Maybe it was."

The evidence clearly shows that this close proximity between plaintiffs' car and the car they were trailing continued while the two cars travelled quite a long distance.

The evidence shows that Mrs. Roberts had opportunity to know of the danger she was in. It is not contended that she protested or otherwise sought to prevent her husband from trailing so closely behind the car ahead of them and her failure to do so contributed to his negligence and the accident.

In the case of Toups vs. M. L. & T. R. R. & S. S. Co., 4 La. App. 136, the court said:

"Though it be the general rule of law that the negligence of the driver of an automobile cannot be attributed to one travelling with him, neither occupant of the vehicle can recover when it is shown that the proximate cause of the accident was the failure of both to have seen what each of them should have seen."

It is contended on behalf of the plaintiff, Mrs. Barbara Roberts, that the negligence of her husband, L. S. Roberts, in operating the car cannot be imputed to her as an occupant of the vehicle.

But considering the record admissions of both Mr. and Mrs. Roberts by their own testimony herein quoted, we are constrained to conclude that each of them was recklessly disregardful of their own safety in travelling so rapidly and trailing the car ahead of them so closely and not maintaining a better look-out and that their negligence in these respects precludes recovery by either of them.

For these reasons, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.