No. 397

First Circuit

___

HARDEE v. NEVERS

___

(February 13, 1929.   Opinion and Decree.)
(April 13, 1929.   Rehearing Refused.)

___

L. V. Cooley, Jr., of Slidell, attorney for plaintiff, appellant.

Ott & Rich, of Bogalusa, attorneys for defendant, appellee.

MOUTON, J.   Plaintiff was driving a Chrysler auto south from Pearl River towards Slidell from which place defendant was driving his Studebaker car, northward to Bogalusa. The autos were therefore traveling in opposite directions. A collision occurred between the two cars at or near a concrete bridge about one mile south of Pearl River Station from which plaintiff was coming.

Plaintiff alleges that his car was completely wrecked as a result of the collision and demands damages against defendant. The case was tried by a jury which rendered a verdict rejecting the demand. The district judge rendered judgment approving the verdict.

Plaintiff appeals.

The accident happened in the daytime. The defendant was returning to Bogalusa from a fishing trip, with Mrs. Gregory, her husband, defendant's daughter, another young lady and Claude Dunlap. These parties were returning to Bogalusa in three cars; a Buick, Studebaker and Ford coupe. Mrs. Gregory was driving the Buick ahead of the other cars, defendant was immediately in the rear of her car, and Dunlap was at some distance behind the Studebaker, defendant's car.

Plaintiff says defendant suddenly swung his car from behind the Buick Mrs. Gregory was driving and ran into his car at the time the cars were about meeting at the bridge.

J. Felthem, then a stranger to plaintiff, who was coming in a car in the rear of plaintiff from Pearl River Station, says that all of a sudden defendant's car shot out from behind the other car, struck plaintiff's car, wrecking it, and injuring his wife. He says plaintiff "was just at the bridge at that time."

Mrs. Hardee, wife of the plaintiff, who was riding on the front seat of the car her husband was driving, gives practically the same account of the accident as was given by Mr. Felthem, and said the collision occurred at the bridge, giving as the reason for this statement, that when she got out of her car, she had just enough room to get on to the curbing of the bridge.

Defendant testifies that when the collision occurred he had stopped his car and was about ten or twelve feet from the bridge on the south side or Slidell side.

Mrs. Gregory, defendant's witness, says that plaintiff passed her car just as she had cleared the bridge, when she was about four or five feet on the other side, which the record shows was on the north side.

It appears from the testimony of all the witnesses that plaintiff was, at the time of the collision, driving on the right side of the road going south, and it is not disputed that he had the right to be there.

The cause of the accident is explained by the testimony of Mrs. Gregory and by that of defendant. Mrs. Gregory explains that when she saw plaintiff coming along on the other side of the bridge, she thought they would meet on the bridge, so she slowed down her car, coming practically to a stop, then changed her mind, and went across, passing plaintiff at about five feet beyond, as heretofore stated. The defendant in giving his version of how the accident happened, says that as he got to the bridge Mrs. Gregory almost stopped her car, that as he was right behind her, "to keep from hitting her in the back," he turned his car to the left, and that then Mrs. Gregory started on her way across the bridge.

He says that when he turned to his left to avoid striking Mrs. Gregory's car, he was then about a car's length behind, and which he fixes at about eight feet.

Defendant says "there was very little time between the time I turned out and when we ran together." He says when Mrs. Gregory slowed her car for the bridge, "I had never seen Hardee coming at that time;" and explains that he saw him when his car and Mrs. Gregory's auto crossed each other on the Pearl River side of the bridge.

It is, therefore, manifest that when defendant suddenly swung his car to his left, and in the pathway of plaintiff's

auto, he was in close proximity to plaintiff's car. He had not seen plaintiff, and if he had, before turning to his left, it is extremely doubtful that plaintiff saw his car as he was directly behind Mrs. Gregory and it is certain that plaintiff, if he saw defendant, could not have had the slightest idea that he would turn to his left.

In Courts of Appeal Rep., vol 1, page 280, the court said:

"It is the duty of the chauffeur driving behind an auto to so regulate his distance and his speed as not to collide with a car in front of him in case the latter comes to a stop." See to the same effect Roberts vs. Eason, 6 La. App. 703.

Mrs. Gregory was traveling on her way to Bogalusa at about twenty-five miles an hour. Defendant's car, the evidence shows, was about eight feet behind Mrs. Gregory's car when they reached the bridge, and that he suddenly turned to his left to avoid crashing into the Buick. It is clear that defendant had not properly "regulated his distance" from the car ahead of him, nor his speed, and that he was flagrantly at fault in that respect. If he had turned to his right, which he should have done, no collision could have occurred, as plaintiff would have continued to his right along the right side of the roadway. In the emergency, which confronted defendant, having, we presume, no time to think, he turned to his left directly in front of plaintiff's car. This situation was created entirely by the gross fault of defendant, and as he was on the wrong side of the road when the impact came, he must be held responsible, unless he can escape on his plea of the last clear chance.

Mrs. Gregory says, "right after I passed the bridge plaintiff crossed me, and I heard the crash caused by the collision." This part of her testimony shows with the other facts to which we have referred on this subject how close plaintiff's car was to that of defendant at the time of the accident. As such was the situation of the two cars, it is obvious, that plaintiff, being unexpectedly imperiled by the sudden appearance of defendant's car in front of him, could not have been expected to turn his car from the right side of the road where he was, to the left side and thus pass alongside the car of defendant whose front wheels were on the west side of the road, and his rear tires near the center line of the roadway. Plaintiff says, as he approached the bridge he had slowed up and was going at about twenty miles an hour. Let us say he was then going at thirty, which was not an excessive or illegal speed, it would have been almost physically impossible for him so situated and surprised as he must have been by the presence of the car suddenly darting across his passage, to have performed the feat of successfully passing defendant's car by swerving his car to his left side of the road.

In Collier vs. Frank Varino & Co. et al., 153 La. 636, 96 So. 500, where a pedestrian suddenly stepped in front of the driver of a truck, the court said the driver could not anticipate that the party would step across his way, and that though he was driving at an excessive speed, the stepping in front of the car by the party killed, was the proximate cause of the accident, as the driver was deprived of the last clear chance of preventing the accident. This rule applies with peculiar force here, as the plaintiff could certainly not have anticipated that his passage would be so suddenly and unexpectedly blocked by defendant's car, and under such circumstances, it must be held that the proximate cause of the accident was due to the action of defendant.

In passing on a question involving the application of the last clear chance rule, the court in Tyer vs. Gulf C. & S. Ry. Co., 143 La. 177, 78 So. 438, said it must clearly appear that the party after seeing the danger, could by the exercise of ordinary care have avoided the danger, or that by the exercise of ordinary care could have seen the danger in time to avoid the accident. Ordinary care, says the court in that case, is not a constant, but a varying condition, dependent upon the circumstances of each particular case.

It is evident in this case that plaintiff by the exercise of ordinary care, considering the "conditions" then existing, could not have seen the danger in time to have avoided the collision, and after seeing it could not have avoided it by the exercise of ordinary care. The facts and circumstances of this case as we have hereinabove related show that under the doctrine of the last clear chance defendant can find neither refuge or relief from the claim of plaintiff.

Defendant contends that even if plaintiff is entitled to judgment he cannot recover in this suit because he has failed to prove his damages as the law required.

Plaintiff was asked if after the automobile had been wrecked as described in the suit, what became of it. In his petition plaintiff had alleged that his auto had been completely wrecked and demolished beyond repair. If it was wrecked as described in plaintiff's suit, it must certainly have been almost a total loss.

He said the value of his auto was one thousand one hundred seventy-six 80/100 dollars ($1176.80), and that the Chambers people from whom he bought another auto, allowed him six hundred dollars ($600.00) for the wrecked car. As he received six hundred dollars ($600.00) on his wrecked car, he claims the sum of five hundred and seventy-six dollars ($576.00) for the balance of its value with legal interest from judicial demand. We think, the evidence is sufficiently certain to allow judgment for plaintiff for the amount claimed.

Counsel for defendant refers to the salutary rule which the appellate courts have invariably observed not to lightly disturb the findings of a jury and the trial judge on issues of fact. We have always endeavored to apply that rule in cases of this character, but here, after a careful and patient consideration of all the facts and circumstances of the case, we are constrained to reverse the verdict of the jury and the judgment confirming it being manifestly erroneous.

It is therefore ordered, adjudged, and decreed that the verdict and judgment appealed from be avoided, annulled and reversed; and, it is further ordered and decreed that plaintiff have judgment against defendant for the sum of five hundred and seventy-six dollars ($576.00), with legal interest thereon from judicial demand until paid with cost of court.