JANVIER, Judge.
This suit results from a rather unusual automobile rear-end collision which occurred on May 19, 1952, at about ten o’clock in the morning on Poydras Street, near Loyola Avenue, in New Orleans.
Stanley J. Barrosse, one of the defendants, was driving his 1940 Buick Sedan on Poydras Street. A very strong wind was blowing across the car from right to left. It was raining very hard and the surface of the street was wet and slippery. Behind the Barrosse car was a 1947 Buick auto-' mobile owned and driven by Perry J. LeBlanc. Suddenly, and without any previous warning, the hood which covered the motor of the Barrosse car was blown from its position on the car and, when Barrosse saw it leave its proper position, he applied his brakes in emergency and brought his car to a sudden stop. Before LeBlanc could bring his car to a stop it had crashed into the rear of the Barrosse car and had sustained the. damage on which this suit is based.
LeBlanc assigned to the Max Barnett Furniture Có., Inc., his claim against Barrosse and Barrosse’s liability insurance carrier in the sum of $241.47, and the Barnett Company then brought this suit against Barrosse and the Metropolitan Casualty Insurance Co. of New York, the said liability insurance carrier of Barrosse.
Plaintiff alleged that the accident had resulted from negligence of Barrosse “in not having his hood properly and securely fastened,” that the hood of the Barrosse car was blown over that car “back towards the LeBlanc car,” and that “LeBlanc was suddenly confronted with the hood of the *887 Barrosse car flying through the' air directly at him.” Plaintiff further alleged that-the accident “was in no way caused or contributed to by any negligence or lack of care on LeBlanc’s part.”
Barrosse and the Metropolitan Casualty Insurance Co. answered averring that there had been no negligence on the part of Bar-rosse and that the accident had resulted from negligence of LeBlanc in failing to keep a proper lookout, in failing to have his car under control, and “in traveling too close to the vehicle immediately preceding him in the line of traffic.”
In the First City Court of New Orleans there was judgment in favor of plaintiff and against both defendants solidarity as prayed for in the sum of $241.47, with legal interest from judicial demand and for costs. Both defendants have appealed devolutively and suspensively.
It is conceded that the amount claimed correctly represents the cost of the repairs to the LeBlanc car which were made necessary and that Max Barnett Furniture Co., Inc., became assignee of the claim of LeBlanc and was therefore “the proper plaintiff in this case.”
The record shows that the weather was extremely bad. According to LeBlanc there was “a very strong wind, a very strong rain.” Referring to the condition of the surface of the street, LeBlanc said: “It was very slippery.” When asked how far behind the Barrosse car he was driving, he stated “about 10 to 12 feet, IS feet.” When asked to point out “a distance in this courtroom that will show about how far behind his car you were,” he pointed to a wall in the courtroom and said, “maybe a little closer than that.” It was shown that he had indicated a distance of about 13 feet.
Neither Barrosse nor LeBlanc attempted to estimate the speed at which either of the ■cars were travelling.
It seems certain that the hood of the Bar-rosse car could not have been blown from •its proper position had it been secured as ■it should have been, and that the four Spring bolts which should have attached it to the car either were entirely absent or had not been attached to the frame of the car. Consequently,' we conclude that the blowing off of the hood resulted from negligence on the part of Barrosse. Therefore, the question posed for our consideration is simply this: Was the proximate cause of the accident the blowing off' of the hood, or was the result caused or contributed to by the fault of LeBlanc in operating his car too close behind the Barrosse car at a speed which did not permit of its being stopped in time to avoid contact with the Barrosse car?
There is a well-established rule which is stated in a syllabus which appears in Crow v. Alesi, La.App., 55 So.2d 16:
“A motorist following other traffic must keep his automobile at a safe distance behind so as to enable him to stop his automobile in a sudden emergency.”
In McDaniel v. Capitol Transport Co., Inc., 35 So.2d 38, 42, the Court of Appeal, First Circuit, citing Blashfiéld’s Cyclopedia of Automobile Law, Vol. 1, sec. 29, p. 454, said: "
“In trailing other cars, a motorist must govern his ‘speed or keep back a reasonably safe distance- so as to provide for the contingency of a car in front'suddenly stopping, and so that-he can stop without a collision, or can turn out sufficiently to pass the vehicle in front without going across the street in-the way of traffic approaching from the opposite direction, * * *.”
See, also, Burns v. Evans Cooperage Co., Inc., 208 La. 406, 23 So.2d 165; Vienne v. Chalona, La.App., 28 So.2d 154; Roberson v. Rodriguez, La.App., 186 So. 853; Hill v. Knight, La.App., 163 So. 727; Roberts v. Eason, 6 La.App. 703.
It is recognized that there may he special circumstances which might justify the failure of the driver of the second car to bring his car to a stop before striking the first car, and counsel for plaintiff insists that *888 such circumstances existed here,- that this is one of the cases which justifies the application of the exception to the above-stated general .rule.
This exception to the general rule applies wherever " something occurs unexpectedly which causes the driver of the second car confusion and prevents his bringing his car to a stop. This situation is referred to in Woodall v. Southern Scrap Material Co., La.App., 40 So.2d 495, 498, and which we, referring to a decision of the Supreme Court in Dodge v. Bituminous Casualty Company, 214 La. 1031, 39 So.2d 720, said:
“That opinion, with the ‘per curiam’ by which a rehearing was refused, indicates to us that the Supreme Court is still of the opinion that the driver of a vehicle is under the primary duty of operating it so that he will not run into any obstruction or vehicle ahead pf him, but that there may be exceptional circumstances which will excuse his failure to see such obstruction or other vehicle in time to avoid it.”
In most of the cases in which the exception to the general rule hqs been held to be applicable, tire driver of the first or leading car was attempting to hold liable the driver of the, second or following car, and it was held that even though the driver of the following car may have been at fault in following too closely behind the- first car, still the driver of, the first car could not recover because the sudden stopping, of his car had resulted - from negligence on his part and that this contributory negligence on his part should prevent his recovery.
In Leon v. Neal, 34 So.2d 276, 278, the Court of Appeal for the Second Circuit affirmed a judgment dismissing the suit of plaintiff who was the driver of the leading car. The Court of Appeal quoted with approval from the. reasons given by the District Judge: ...
“My conclusion ■ therefore, is: .that the accident and -resulting damage waá - caused by the combined, Concurrent negligence of the drivers of both-cars,which continued down, to the. time of. the collision, and in this situation neither party can claim any award from-the other.”
While the Court did say that the negligence of the driver of the leading car in stopping too suddenly was the “proximate cause of the accident,” it obviously did not use .the words “proximate cause” in their usual sense for it very definitely said that both drivers were at fault, the one in stopping too suddenly and the other in running into the rear of. the first car, and that the accident had resulted from the negligence of both. Furthermore, it was charged in that case that the driver of the second car was following too closely behind the first car. The Court of Appeal said that the driver of the second car was not negligent since he was following the first car “at a distance of .forty feet, or thereabouts.” In the cáse at bar the second car was following the first at a distance of about 13 feet on a slippery street. .
Surely where the surface of the road is wet and slippery the driver of the following car must be unusually careful.
In Cosse v. Henley, 193 So. 206, 207, the Court of Appeal for the Second Circuit, referring to the operator of an automobile on a slippery street said:
“Every circumstance dictated to him the necessity of the exercise of super precaution * *
There are, it is true, also decisions in which it has been held that the driver of the second or following car should be permitted to recover from the driver of the first or leading car and that those decisions are based on the finding in each of such cases that the sudden stopping of the first car was made necessary by a-n emergency which was created by negligence of its driver. Notably among those cases is Hill v. Knight, La.App., 163 So. 727, 729, in which the plaintiff was driving the following car and, as a result of the sudden stop' ping of the leading car, the plaintiff’s car crashed into the rear of that car. The Court of Appeal for- the Second Circuit held that the accident had ■ resulted from *889 negligence of the driver of the leading car in stopping his car too suddenly and without warning of any kind, but the Court said:
“We recognize and approve the rule of law that a following driver, should drive at such a speed and maintain such an interval that he can avoid collision with the leading car, under circumstances which should reasonably be anticipated by him. ,***”•
Furthermore, in that case the Court recognized the fact “ * * * that no hard and •fast rule can be laid down. -Each case must be decided' according to its own peculiar •conditions.” Surely it .will be noted that there is. a. clear ,distinction between the facts in the Hill case and this case, for ■here the circumstances of the heavy rain, the very strong wind, and the very slippery ■street were sufficient to put the driver of the second car on guard against any possible occurrence which might necessitate the stopping' of the first car. ’
While we would willingly follow the ¡reasoning of those decisions could we find facts which would seem to' justify that course, we find it a little difficult to understand the reasoning which lies back of. them. The general rule that the driver of the second car must maintain such distance' behind the leading car and must operate it at such speed as will permit of his bringing his car to a stop, even should the first car be brought to a sudden stop in an unexpected emergency, is based on the view that'the driver of the second car should be prepared to stop no matter what might be the cause of the stopping of the first car. If then it is negligence for a driver of the following car to operate his car so closely behind the first or at such speed that he cannot stop if the first car is brought to an unexpected stop in an emergency, we find it difficult to understand why such negligence should not exist regardless of the reason for the sudden stopping of the first car. If the first car should stop for some reason caused by negligence of the driver of that car, necessarily that negligence should prevent the driver of that car from recovering from, the driver of the second car for damages sustained by the first car. But if the situation is reversed and the driver .of the following car. is attempting to recover from the driver o.f the leading car, as was the case here, we fail to understand why it should be said .that because ’the driver of the 'first car was guilty of negligence in bringing it, to a stop, the negligence of the driver of the second car should'not-betaken into consideration/at all... . . '■ •.
However, we realize, as we have stated, that there have, been such decisions and therefore we pass to ’a consideration of. the facts in an effort to determine whether there was negligence in. LeBlanc -in driving too closely behind the Barrosse car and whether • that negligence. had causal connection with the accident and should prevent recovery, or whether it would be-proper to say that the exception to the general rule should be applied and that the sudden stopping of the Barrosse car was the sole cause of this "áccident.' And a consideration of the facts leaves us convinced that the general rule should be applied here.
In the first place, the evidence leaves us convinced that the hood of the Barrosse car was not blown backwards over the Bar-rosse car and towards LeBlanc as he claims that it was and that it. did not, in any way, ■ confuse him or: interfere with his ability to bring his car to a stop. In the second place, the street, as we have already shown, was, according to LeBlanc himself, “very slippér'y” and wet. In the third place, there was an extraordinary brisk wind blowing. When asked: “Was it an extraordinary wind?” LeBlanc answered: “I guarantee that.”
While there is nothing to show just what was .the speed of the two cars, LeBlanc says that when he applied his brakes, “I slid 13 feet,” so that he must have been operating his car at a speed which, under existing' conditions, did. not permit of its ■being stopped in the sudden emergency. Under these circumstances, surely he was operating his' car too closely behind the Barrosse car. Ten or 12 feet, or even 13 *890 feet, did not afford sufficient distance withr in which he might bring his car to a stop should a sudden emergency cause the driver ahead of him to bring his car to a sudden stop.
Our conclusion is that, though the. sudden blowing off of the hood of the Bar-rosse car was the result of negligence of Barrosse and that though that was the cause of the sudden stopping of his car, the accident would not have occurred but for the negligence of LeBlanc in following too closely behind the other car. This negligence on his part prevents recovery by plaintiff.
Accordingly, it is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and. reversed, and that the suit of plaintiff be and it is dismissed at its cost.
Reversed.