JANVIER, Judge.
The rear end collision from which this litigation results took place at about ten o’clock in the morning, on August 24, I960', on U. S. Highway 90, about nine miles west of a settlement known as Bridge City.
Jelpi P. Picou, one of the plaintiffs, (his wife, Irma J. Picou, being the other plaintiff) was driving his automobile on his way to New Orleans. In the car were his wife and their three minor daughters, Monique, Deborah and Larke. It had been raining, one of the disputed questions being whether it was raining at the time, and the road was wet, and, as Picou, because of engine trouble, was attempting to drive his car off the road onto the shoulder, it was struck in the rear by a car owned and driven by Charles M. Faucheux. The children and Mrs. Picou sustained injuries. Picou himself sustained minor injuries, but has made no claim for recovery therefor.
Mr. and Mrs. Picou brought this suit against Faucheux and his liability insurer, Allstate Insurance Company, alleging that the accident had resulted solely from negligence of Faucheux in operating his car at a dangerously high rate of speed considering conditions existing at the time, in failing to maintain a proper lookout, and,in “generally driving in a reckless, careless and imprudent manner.”
Picou prayed for judgment on behalf of his three minor daughters and on his own behalf for the previous value of his demolished car, and for medical and other expenses resulting from his wife’s injuries. His wife prayed for judgment to compensate her for her own injuries and suffering.
The defendants denied every allegation of the petition except their “corporate capacity, majority and residency,” and that the defendant, Allstate Insurance Company, issued a policy of insurance to Faucheux.
There was judgment dismissing all claims of plaintiffs and they have appealed.
The record leaves no doubt as to the facts, although as we have said defendants, denied every allegation concerning the occurrence of the accident which would seem to include even a denial that there was an accident.
It is certain that it was actually raining hard at the time of the accident. However, regardless of whether it was actually raining, defendant driver admits that it had been raining and that the road was so wet that when Faucheux, going at a speed of about 45 to 47 miles an hour, applied his brake his car skidded 70 feet before striking the left rear of the Picou car. We think the record shows clearly that, as stated by Pi-cou, visibility was very bad.
Picou says that because of the rain the motor of his car began to stall, but that it *101 did not stop and that, therefore, he decided to drive to the right onto the shoulder; that he had his “flash” on, indicating an intention to veer to his right and he says that when his car was struck, two wheels were already off the highway. Faucheux says that he saw only one flash of light from the Picou car. When asked: “Can you give any reason for running into the rear of his car?” he answered: “Well, the only reason was that when I applied my brakes that skidded my wheels * * *.”
The District Judge, in his reasons for dismissing the suit, referring to Picou, says:
“* * * He kac¡ ;hjs lights on and was travelling about 25 miles per hour. His motor drowned and he turned on his rear right turn signal and slowly, at about 5 miles per hour, began moving toward the right shoulder of the road. The right two wheels were on the shoulder when defendant struck the left rear of his vehicle.”
The District Judge stated that the speed of Faucheux was 45 to 47 miles an hour and that he had his lights on; that he saw a flash of the tail light of the Picou car; applied his brakes and skidded 70 feet. The District Judge referred to the speed limit of 60 miles an hour and said that a speed of 45 or 47 miles an hour was not excessive. We find ourselves unable to agree with this statement.
The jurisprudence of this state is replete with decisions involving such rear end collisions, and, from the many decisions, all that can be said is that each case must be decided on its own facts, and that no rule as to distances or speeds can be laid down. Dixie Drive It Yourself Sys. New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298; Max Barnett Furniture Co. v. Barrosse, La.App., 70 So.2d 886.
Whether the stopping of the lead car is so sudden and unexpected as to create an emergency which could eliminate the charge of negligence on the part of the following car, can be determined only by a study of all of the surrounding conditions such as visibility, other traffic, conditions of the road, etc. Here we find nothing to warrant the conclusion that Faucheux was faced with an emergency not of his own making which would justify the belief that the accident would not have occurred had he been the least bit careful in the operation of his car and had he been on the alert and taken precautions which seem to have been required by the surrounding conditions and circumstances.
Under all the circumstances we conclude that the. accident was due entirely to the carelessness and inattention of Fau-cheux and to the speed at which he was operating his car on a wet, slippery road.
We must now consider the question of quantum for damages sustained by Mrs. Pi-cou and the three minor children, and also Mr. Picou’s claim for damages for medical and other expenses as head and master of the community of acquets and gains and for damages to his automobile, personal articles lost in the car, all charged to have resulted from the accident.
Mrs. Picou and the three minors, Monique an infant of one year of age, Deborah, six, and Larke, five, were taken by ambulance to Ochsner Foundation Hospital, in New Orleans. They were examined in the emergency room and were not hospitalized. Reports of the hospital in the record show that the doctor suggested further observation by their family physician; that Monique Picou had no apparent injury, though her mother said that she was exposed to the rain, had a cold and temperature, and had “visible” bruises. We will award $100.00 for Monique Picou’s injuries. Deborah Picou suffered pain and bruises, and, according to her mother’s testimony, she was upset and was later examined by the family pediatrician. We think an award of $200.00 is adequate. As to Larke Picou’s injuries, her mother testified that her right leg bore bruises for several months and an award of $75.00 would not be inadequate.
*102 Mrs. Picou’s injuries were somewhat more serious and we must, therefore, consider their nature, extent and duration, as well as whether a dormant form of epilepsy, which she might have suffered from an early age, was activated or aggravated as a result of the accident.
Mrs. Picou was in her seventh month of pregnancy, but had a normal delivery two months later. The record shows that she sustained a painful “sprained neck” or a mild cervical strain. At the hospital she was examined and X-rayed, given a Thomas cervical collar to use; asked to return in a week and sent home. Upon her return to the hospital five days later, August 29, 1960, she complained of severe headaches, pain in the right eye, numbness in the right arm and her left leg felt abnormal. She was told to discontinue the use of the collar; X-rays made on this second visit showed rather severe muscle spasm of the neck. The doctor who made this examination and report did not testify, but Mrs. Pi-cou said that she had a “lump” on the right side of her head at the temple area because she had struck her head on the front of the car; that she also had bruises on her face and jaw. She remained in bed one week, had headaches, was nervous, could not sleep and worried about her pregnant condition. A month after this accident she had no further trouble from the injuries though she continued to have headaches. For these injuries we feel that $2500.00 would adequately compensate for her pain and suffering.
As we have said, it is contended that the accident aggravated an epileptic condition which only manifested itself eight months after this automobile accident when Mrs. Picou was attending night classes at a state college and suffered a blackout or fainting spell. The next day she visited Dr. Wally J. Picou; he saw her five times until July, 1961. His diagnosis of her condition, based on subjective symptoms and her past history, was an “epilepsy type of thing.” Two weeks later, Dr. Picou sent her to Dr. Jules St. M. Dupont, who specializes in internal medicine. Her complaints were headaches since April 4, 1961. He stated that the accident aggravated an “old brain injury,” and he referred her to a neurosurgeon, Dr. Jose L. Garcia Oiler.
Dr. Garcia (as he is generally known) stated that in giving him her history recalled that she had sustained an injury to her head in 1951 when a metal pipe fell on it and she was disoriented for several days. From this early incident ten years previous to the present automobile accident, subjective symptoms and severe headaches, he reached the conclusion that she suffered from “post-traumatic convulsive disorder— traumatic epilepsy.” On May 24, 1961, Dr. Garcia admitted Mrs. Picou to Mercy Hospital where she remained until May 26. He performed an electro-encephalogram which he termed an operation. The record shows that all X-rays of her skull and tests made in Mercy Hospital at that time were normal. However, the doctor said that Mrs. Picou suffered a head concussion in the August accident; that he could not say positively, but that “perhaps” that accident activated the epilepsy. He saw Mrs. Picou six times; prescribed an inexpensive drug to prevent the faints and blackouts or convulsions, and she testified that she had no episodes for five weeks after taking the drug and so reported this to the doctor when he saw her on the last visit to him, August 22, 1961, at which time she was again pregnant and subsequently had a normal delivery of her eighth child.
Defendants’ two medical experts, who testified by deposition, as did all the other doctors, were Dr. J. Kenneth Saer, an orthopedic specialist, and Dr. Dean H. Echols, an expert in the field of neurosurgery. Dr. Saer examined Mrs. Picou on one occasion, June 11, 1962. X-rays and an examination of the neck, spine and shoulders showed no abnormalities and no evidence of disability, and it was his opinion that Mrs. Picou had fully recovered from the neck injury. He was of the opinion that the headaches and fainting spells were suggestive of petit mal epilepsy and had no relation to the accident *103 of August, 1960. Further he stated that from his study of the reports of Ochsner Foundation Hospital and Mrs. Picou’s history, there was no suggestion of a brain concussion. He frankly said that while his diagnosis of epilepsy was not in his special field of interest, he associated the headaches with petit mal epilepsy; his primary examination was of the cervical injury.
While Dr. Echols neither examined nor treated Mrs. Picou, he based his opinion of her condition' upon records and reports made by examining doctors at Ochsner Foundation Hospital beginning in 1955.
Dr. Echols’ study of the records convinced him that the automobile injury could not possibly have caused or aggravated her condition, petit mal epilepsy. He stated that concussion of the brain never causes this condition or any other kind of epilepsy but that it could result from severe injuries to the brain such as contusions of the brain, both wounds and stab wounds, which could manifest itself in nine or ten months or even later. Dr. Echols pointed out that Mrs. Picou, in 1959, told one of the examining physicians that she had sustained a brain concussion in 1951, and also stated to him that at age fourteen she fainted twice a week for an entire year.
Mrs. Picou’s records showed that she had given birth to her babies in the hospital in the years 1955, 1957, 1959, 1960 (two months after the automobile accident) and subsequently thereto in 1962.
From our review of the record we cannot say that the injuries sustained by Mrs. Picou in the accident of August 24, 1960, had causal connection with her present condition, petit mal epilepsy.
Mr. Picou claims $1691.01 for medical and other expenses incurred by his wife and children and includes the estimated cost fixed by him for lost articles, the stipulated value of his demolished car; and the rental of a car for his transportation to work, made necessary due to the loss of his car. Recovery is allowed for the value of the car in the sum of $655.00, and also the amount he paid Ochsner Foundation Hospital on August 29, 1960, for his wife’s X-ray and examination in the sum of $25.00.
There can be no recovery for the value of the lost articles, which Mr. Pi-cou claims he left in his car, nor for the amount of $160.00, which he says he paid his brother-in-law for the rental of a car in which to transport himself to school, where he taught, 17 miles away from his home as we are not satisfied with the proof, especially as to values. Nor can there be recovery for the cost of his wife’s eye treatment and glasses, nor for charges of her dentist where there is no proof of injury to her eyes or teeth resulting from the accident. Further, in view of our conclusion that Mrs. Picou’s condition of epilepsy was not caused or aggravated by the automobile accident, Mr. Picou cannot be allowed recovery for the cost of her hospital expenses and doctors’ bills incurred by reason of that condition.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment against defendants, Charles M. Faucheux and Allstate Insurance Company, jointly and in solido, and in favor of plaintiff, Mrs. Irma J. Picou, in the amount of $2500.00. It is further ordered, adjudged and decreed that there be judgment against said defendants and in favor of plaintiff, Jelpi P. Picou, for and on behalf of his minor daughters, Monique Picou, Deborah Pi-cou and Larke Picou, respectively, for the sums of $100.00, $200.00 and $75.00, and in favor of Jelpi P. Picou individually in the amount of $680.00, with interest; costs in both courts to be paid by defendants.
Reversed and rendered.