ROGERS, Justice.
 

 Plaintiff sued the Evans Cooperage Company, Inc., and its liability insurance carrier for damages resulting from the allegedly negligent operation of a truck owned by the defendant cooperage company. Defendants filed a joint answer denying that the truck was negligently operated and pleading in the alternative plaintiff’s contributory negligence as a bar to his recovery. The district court, rendered a judgment awarding plaintiff the full amount of damages claimed by him. The Court of Appeal reversed the judgment and dismissed plaintiff’s suit. Burns v. Evans Cooperage Company, 17 So.2d 743, 745. Certiorari has brought the case here.
 

 The record discloses that on May 23, 1940, while plaintiff was driving from New Orleans to Baton Rouge, his automobile-was damaged and he was slightly injured when at a point near the intersection of the Airline Highway and the Hebert Road leading to Norco, Louisiana, the car ran
 
 *409
 
 •off the highway into a ditch. At the time the accident occurred, which was about eight o’clock in the morning on a clear day, plaintiff was following a truck, with trailer attached, owned by the Evans Cooperage Company and operated by Francis D. Evans, a young man twenty-four years ■of age, and a part owner of the business. The trailer was partially loaded with empty ■drums that were to be delivered to the Shell Petroleum Corporation at Norco. The Airline Highway is a paved road running from New Orleans to Baton Rouge. At the time ■of the accident the Highway had not been made into a four-lane highway with a neutral ground separating the north and south bound lanes as it is today. What is the south-bound paved lane today was at the time of the accident
 
 a
 
 graveled roadway about thirty feet wide. The Hebert Road connects the Airline Highway with the old river road at Norco.
 

 Plaintiff contends that as he was about to pass the truck the driver of the truck, without giving any indication of his intention to do so, turned abruptly into the Hebert Road, forcing plaintiff off the highway into the ditch. Defendants contend that the accident was not due to the negli.gence of the driver of its truck, but resulted solely from the excessive speed at which plaintiff was driving his automobile, which prevented plaintiff from bringing his •car under control when the driver of the truck slowed down for the purpose of •making a left turn, for which he had previously signaled.
 

 Feeling that the doctrine of last clear ^chance might be applicable, we ordered up the case for the purpose of reviewing the decision of the Court of Appeal. But, after considering the record in connection with the oral arguments and briefs filed by counsel representing the parties, we have reached the conclusion that the doctrine is not involved in the case.
 

 It is fundamental that one who relies on the doctrine of last clear chance in effect admits his own negligence, but charges that the other party could, nevertheless, have avoided the accident. Here plaintiff, showing at least inferentially the absence of negligence on his part, alleges that the driver of defendants’ truck was guilty of negligence in suddenly and without warning turning the truck to the left on the highway at a time when plaintiff was attempting to pass in his automobile.
 

 Defendants admit that the accident occurred, but they deny that the accident occurred in the manner charged by plaintiff or that they contributed to it in any way. In the alternative, defendants allege that plaintiff was guilty of contributory negligence. Neither by pleading, nor by testimony, nor by argument was the doctrine of last clear chance invoked by plaintiff as a limitation upon this alternative defense. In these circumstances, defendants’ liability must be determined according to the ordinary rules of negligence and contributory negligence.
 

 The judge of the district court held that the accident resulted from the negligence of the driver of defendants’ truck. The Court of Appeal, after reviewing the testimony, held primarily that the accident was not caused by the negligence of defend
 
 *411
 
 ants’ truck driver and, secondarily, even if the defendants’ truck driver were negligent plaintiff was guilty of contributory negligence. In accordance with its holding, the Court of Appeal reversed the judgment of the district court and dismissed plaintiff’s suit.
 

 Plaintiff, alleging that he has sustained injury through negligence in the operation of an automobile, has the burden of establishing, by a preponderance of the evidence, negligence on the part of the defendant, and the burden rests upon the defendant to show the plaintiff’s contributory negligence by a preponderance of the evidence. 5 Am.Juris. sec. 655, p. 863.
 

 The first question to be determined in this case is whether the driver of defendants’ truck is chargeable with the act of negligence complained of by plaintiff, with the burden of proof resting upon plaintiff to establish the alleged negligent act. If, as alleged by plaintiff, the driver of defendants’ truck suddenly and without warning turned the -truck to the left on the highway at the time plaintiff was passing in his automobile, thereby causing plaintiff to run the automobile into the ditch, defendants are liable. If, on the other hand, as alleged by defendants, the driver of their truck did not turn' the vehicle to the left, but slowed down and came to a stop after giving the necessary signal preparatory to making the .turn to the left and plaintiff, disregarding the signal, cut to the left off the highway onto the abutting gravel road, skidding for a considerable distance thereon and finally crashing into the ditch, defendants are not liable.
 

 The accident occurred on a straight road and on a clear day. For aught that appears in the record, plaintiff and the driver of defendants’ truck were capable and normal persons. The account which each gives of the manner in which the accident occurred is vastly different. As shown by the opinion of the Court of Appeal, the defendants’ truck driver testified that on the morning of the accident, he was driving his truck, with trailer attached, on the highway in the direction of Baton Rouge. The trailer was loaded with empty steel drums to be delivered to the Shell Petroleum Company at Norco. He was operating the truck at a speed of between thirty and forty miles an hour on the right hand or proper lane of the highway and when he reached a point about one hundred yards from the entrance of the Hebert Road, he slowed down as it was his intention to make a left turn'into the Hebert Road. As he slowed down he put out his hand to indicate that he was going to turn and as he did so he noticed, from his rear view mirror, plaintiff’s car approaching from the rear at a high rate of speed. When he saw plaintiff’s car it was about one hundred yards from the rear of the truck. He continued to observe it and upon becoming aware that plaintiff was not retarding the speed of his automobile, he waved his hand up and down in the hope that it might attract plaintiff’s attention to the fact that he was about to make a left hand turn into the Hebert Road. While he was doing this he continued to slow down the speed of the truck and upon observing that plaintiff was unable to slacken his speed and had lost control of his car
 
 *413
 
 he brought the truck to a stop near the entrance of the Hebert Road. Plaintiff swerved to the left onto the loose gravel which abutted the highway, where he zigzagged and skidded for a considerable distance and finally ran into the ditch on the upper end of the Hebert Road.
 

 Plaintiff, who was driving from New Orleans to Baton Rouge for the purpose of attending one of the sessions of the Legislature, testified that he was travelling at a speed not in excess of thirty-five miles per hour; that when he approached the Hebert Road, ’ which leads to Norco, he observed defendants’ truck, with trailer attached, about one-quarter to a half mile in front of him; that the truck driver was travelling at approximately the same speed as his automobile and that it slowed down upon its approach to the Hebert Road; that when the truck reached the entrance of the road his automobile was about thirty-five feet from its rear and that at that point the driver of the truck suddenly turned to the left without any warning whatsoever, compelling him to swerve to his left onto the gravel road abutting the highway in order to avoid colliding with the truck and, that he travelled some fifteen feet on the gravel part of the road before his car ran into the ditch where it came to rest with its front wheels turned towards New Orleans, or in the opposite direction from the way he had been travelling.
 

 Plaintiff placed on the stand, as a witness in his behalf, Dr. J. Earl Clayton, who operates a sanitarium located on the East side of the Airline Highway about four or five hundred feet from the Hebert Road. Dr. Clayton stated that on the morning of the accident he had driven from the sanitarium in his automobile onto the highway and was proceeding down on the riverside traffic lane thereof with the intention of going to Norco by way of the Hebert Road; that as he approached the road he noticed the large truck that was coming up the highway from the opposite direction; that he first gained the impression, due to the fact that it was loaded with steel drums, that -the truck was going to turn to its left into the Hebert Road, but that as he went on it appeared to him that the truck was going to continue on to Baton Rouge, inasmuch as its driver did not start to turn on a wide angle; that being of this belief, he continued forward and was just about to make a right hand turn into the Hebert Road when he noticed that the driver suddenly turned to the left, whereupon, being afraid he could not make the right hand turn into the Hebert Road, he speeded his car forward on the highway, past the front of the truck and the Hebert Road and brought it to a stop in front of the “Spillway Bar” located on the river side of the highway and on the lower or New Orleans side of the Hebert Road. Dr. Clayton further stated that at the time the truck made the left turn into the Hebert Road he noticed plaintiff’s automobile, approaching the truck from the rear and that plaintiff’s car was about one hundred feet to the rear of the truck at that moment and plaintiff was compelled to cut to his left in order to avoid contact with the rear of the truck. Dr. Clayton was unable to approximate the speed of plaintiff’s car but,
 
 *415
 
 as found by the Court of Appeal, it is evident from his testimony that he was of the opinion the car was being operated at a fast rate, for he said, “Well, he was just about one hundred feet behind the truck and I could hear the brakes — when he applied his brakes. I could hear the tremendous noise of the application of the brakes.”
 

 In evaluating the testimony of plaintiff and of Dr. Clayton, the Court of Appeal observed, and we think properly, as follows:
 

 “The testimony of plaintiff and Dr. Clayton strikes us as being most confusing and we find it well nigh impossible to discern from their statements the underlying cause of the accident. In truth, there is only one point on which they are in absolute agreement — that is, that the truck driver made a sudden left turn into the Hebert Road without previous warning. But where was plaintiff’s car at the time this turn was made? According to the allegations of the petition, plaintiff’s car was in the act of passing the truck when the abrupt turn was executed. According to plaintiff’s statement, his car was 30 to 35 feet to the rear of the truck at that time. And, according to Dr. Clayton, plaintiff’s car-was 100 feet to the rear of the truck.
 

 “It seems obvious to us that plaintiff could not have been passing the truck at the time it executed the left turn for, in such case, his car would have collided head-on with the car of Dr. Clayton, which, according to the doctor, passed the front of the truck from the opposite direction just as. the truck turned to the left. It is also difficult to understand how Dr. Clayton’s car travelled across the Hebert Road in front of the truck and was able to stop in front of the Spillway. Bar (which is on the lower side of the Hebert Road) without coming in contact with plaintiff’s car, which, according to the evidence, was skidding and sliding over the loose gravel towards -the ditch. Surely, the cars would have contacted each other, if the sudden turn of the truck had been responsible for plaintiff’s car leaving the highway. Yet, nowhere in his testimony does plaintiff say that he ever saw Dr. Clayton’s car nor does Dr. Clayton explain whether he had crossed the Hebert Road before plaintiff ran his automobile into the ditch on the upper side of that road.”
 

 In addition to what the Court of Appeal has observed on the point, we are unable, for our own part, to understand the testimony of Dr. Clayton that as he began to turn into the Hebert Road the truck also began to turn into the road, compelling him to cut across the road and stop in front of the Spillway Bar. If the truck turned to the left, as testified to by Dr. Clayton, the effect of the movement was to place the Spillway Bar to the left of the truck. Why Dr. Clayton, coming from the opposite direction in attempting to avoid a collision with the truck, should have driven his car in the same direction in which the truck was moving so as to pass in front of it to reach the Spillway Bar and not to the right and away from the truck in the direction of the Hebert Road, which would have been the natural and ordinary thing to do is not satisfactorily explained in the record. Dr. Clayton admits that, just prior to making
 
 *417
 
 the alleged left turn, defendants’ truck was on the right side of the highway going towards Baton Rouge. He further says that plaintiff was on the right side of the highway before he began to approach the truck, that when about one hundred feet to the rear of the truck he cut to the left on the gravel road and that when the truck turned plaintiff was on the left side of the road trying to keep away from the truck. Dr. Clayton also testified that the driver of the truck made an abrupt turn to the left without slowing down in speed. In this respect his testimony is wholly inconsistent with that of plaintiff and of defendants’ truck driver, both of whom testified that the truck slowed down as it approached the Hebert Road.
 

 Witnesses are often honestly mistaken as to their own ability to observe facts and to testify to them with accuracy. We are impressed with the view that the attention and effort of Dr. Clayton were directed to the driving of his automobile so as to avoid a collision with the truck which he thought was impending and that therefore he was not in a position to observe with any degree of accuracy the facts and circumstances surrounding the accident in which plaintiff was injured and his car damaged.
 

 The Court of Appeal, as shown by its opinion, found, and we think correctly, that the testimony of the truck driver was plausible and that it coincided with the reasonable possibilities of the case. We quote with approval the following comment of the Court of Appeal on the testimony of the truck driver, to-wit:
 

 “He (the truck driver) states that plaintiff was driving his car at such* a high rate of speed (60 miles per hour) that he was unable to control its movement. An examination of all of the evidence gives us the same impression, despite plaintiff’s statement that he did not exceed 35 miles per hour. Dr. Clayton’s evidence sustains this view for, while he is unable to gauge the speed of plaintiff’s car with accuracy, he states that plaintiff could not stop when the truck turned left into the Hebert Road and that plaintiff was, at that time, 100 feet to the rear of the truck. It is manifest to us that an automobile which cannot be brought to a stop within 100 feet and which leaves the road out of control, skids on loose gravel for a considerable distance and finally comes to a stop in a ditch, is not being operated in a prudent manner, particularly where its driver has observed a large truck and tractor (which it had been following) slow down at a place at which the driver has reason to believe the truck might turn.”
 

 Our examination of the record leads us to the conclusion that the driver of defendants’ truck was preparing to make a left turn into the Hebert Road after taking the proper precautions, but that he did not attempt to make the turn when he noted the approach of plaintiff’s automobile out of control, and that the truck did not come to a stop until plaintiff’s car came to rest in the ditch. The uncontradicted testimony of the driver is that at no time did his truck cross the center lane of the roadway and that he left the truck in the same position to which it had rolled to a stop
 
 *419
 
 until a state highway officer appeared on the scene and ordered him to remove it.
 

 We gather from plaintiff’s testimony that he was not in the act of passing the truck when he contends that the truck turned suddenly to the left. In testifying in his own behalf, plaintiff made the positive statement that he intended to pass the truck on the left side, although he did not intend to pass it at the intersection of the Hebert Road. Plaintiff stated that he was probably about twenty or twenty-five feet from the truck when it reached the intersection, but this estimate of the distance between the vehicles at the time referred to is obviously incorrect, if any effect is to be given to the testimony of Dr. Clayton that' plaintiff’s automobile was about one hundred feet to the rear of the truck at the time it made the turn for the purpose of entering the Hebert Road.
 

 It is the duty of the driver operating an automobile, upon approaching another automobile from the rear while both cars are travelling in the same direction, to exercise a great deal of care, lie must look out for the person ahead, realizing that that person is engaged in handling a high-powered machine requiring constant attention and that his lookout is forward and not backward. The driver of the rear car must keep a safe distance behind the front car and must have his machine under such control as to avoid injury to the car ahead or to his own car so long as the driver of the front car is driving in accordance with his rights. The evidence in this case shows that plaintiff was not operating his car in accordance with this rule. He was driving his automobile at an excessive rate of speed, paying little or no attention to the surrounding facts and circumstances, with the result that he suddenly came upon a truck that was slowing down, causing plaintiff to turn to the left in order to avoid a rear-end collision. In other words, the record in this case discloses that the accident was caused by plaintiff’s negligence and not by ■ the negligence of defendants’ truck driver.
 

 For the reasons assigned, the judgment of the Court of Appeal is affirmed.