LOTTINGER, Judge.
This is a suit for personal injuries and property damages resulting from a four-vehicle collision which occurred on Airline Highway near the intersection of Greenwell Springs Road, Baton Rouge, Louisian?. The petitioners are Johnece Lee Lejeune, who was driving one of the vehicles, and her husband, Noel F. Lejeune, Jr., who sues for medical bills and property damages to his automobile. The defendants are U. S. *328 Fidelity and Guaranty Company, the insurer of a Studebaker pickup truck driven by Donald Willie Cowart, Delta Fire and Casualty Company, the insurer of an automobile driven by Howard J. Helmke, Robert E. Wall, the employer of Duane Portero, who was driving a Dodge pickup truck, and his insurer, North River Insurance Company. Cowart, Helmke and Portero were the drivers of the other three vehicles which were involved in the accident. The Lower Court awarded judgment in favor of the defendants and dismissed the suit. Petitioners have appealed.
The record shows that the accident occurred on May 8, 1956 at about 4:20 o’clock p. m. All of the parties involved were proceeding in a northerly direction on the Airline Highway in Baton Rouge, Louisiana, in the vicinity of the intersection of the Airline Highway with Greenwell Springs Road. The Airline Highway is a four-laned thoroughfare, two lanes for traveling northerly and two lanes for traveling southerly, the northerly and southerly lanes being separated by a neutral ground. Greenwell Springs Road is a heavily traveled highway, running generally East and West and the intersection is a highly traveled one.
Immediately prior to the accident, petitioner, Mrs. Lejeune, was driving a Ford automobile on the Airline Highway in a northerly direction. She was in the left lane of traffic moving north. Following her in á northerly direction and in the left lane was a Studebaker pickup truck operated by Donald W. Cowart, following Cow-art was a Dodge pickup truck operated by Duane Portero, and following Portero at some distance was a Buick automobile operated by Howard J. I-Ielmke. Upon approaching the intersection with Green-well Springs Road, which intersection is controlled by a traffic light, the traffic headed northerly on the Airline Highway stopped for a red light. The petitioner was the lead car in the left hand lane, and both the Studebaker operated by Cowart. and the Dodge operated by Portero were stopped, in that order, immediately behind her. As the traffic signal turned green, the Buick automobile operated by Mr. Helmke was approaching at a distance of about one city block behind the Dodge pickup truck operated by Portero.
As the light turned green, the petitioner’s vehicle, as well as the Studebaker and Dodge pickup trucks, commenced moving at a slow rate of speed. The petitioner testified that she intended to make a left turn into a cutoff which runs from the northbound lanes across the neutral ground into the southbound lanes, purchase a newspaper from a newsboy who was standing on the neutral ground, and then continue the left turn so as to proceed to her mother’s home. Prior to the execution of this left turn, and while petitioner was either going at about five miles per hour or was stopped, a four-way collision occurred in which the Studebaker hit the Ford, the Dodge hit the Studebaker, and the Buick hit the Dodge.
The petitioner testified that she started from the green light at a very slow rate of speed which she estimated at about five miles per hour. After proceeding a short distance, some one hundred forty (140') feet, she turned on her left turn indicator and put out her left hand so as to signal for a left turn into the crossway. At about this time, and while she claims that she was still moving at a speed of five miles per hour, she was hit in the rear by the Studebaker pickup truck operated by Donald Cowart. The petitioner’s car stopped within a very short distance with its left front wheels against the curbing. Petitioner testified that she called the City Police, and that, after the investigation, she drove her car away from the scene of the accident.
Donald Cowart, who was driving the Studebaker pickup truck, testified that he was 19 years of age and stopped for the red light at a distance of about one car length behind the Ford operated by petitioner. After petitioner started on the green light, Cowart testified that he fol *329 lowed her and had come to a speed of approximately eight or ten miles per hour in second gear when the brake lights on the Ford came on. He testified that he immediately applied his brakes and was almost stopped when he was hit in the rear by the Dodge pickup truck operated by Portero. Cowart testified that he would have stopped without hitting the Ford if the Dodge had not hit his truck and shoved it into the Ford. It was stipulated that Cowart was within the scope of his employment at the time, of the accident.
Duane Portero, who was driving the Dodge pickup truck, testified that he was 24 years old and stopped for the red light in the rear of the Studebaker truck. He testified that he started off following the Studebaker when the light turned green and that when he passed under the signal light he was at a distance of twenty to thirty feet in the rear of the Studebaker. While he was passing under the light, he heard tires squealing and a crash and immediately applied his brakes. Portero claims that he stopped without hitting the Studebaker, but that after he had come to a complete stop, he was hit in the rear by the Buick which shoved him into the Studebaker. When he was hit by the Buick, Portero claims that he was approximately five (5') feet to the rear of the Studebaker truck. The Dodge pickup truck could not be operated after the accident and it was towed away from the scene.
Howard J. Helmke, who was driving the Buick automobile, testified that he was going forty-five miles per hour and was two blocks away from the intersection when he noticed the cars stopped for the red light. He released his foot from the accelerator and slowed down, and the light changed when he was approximately 150 to 200 feet away from the intersection, at which time he was going about thirty miles per hour. He testified that as he passed under the green light, he was about three car lengths behind the Dodge and traveling at a speed of about twenty-five miles per hour. Suddenly he saw the Dodge truck dip a little bit and saw dust fly and he immediately applied his brakes. He slid into the rear bumper of the Dodge, but testified that he could have stopped in about an additional five feet. Mr. Plelmke testified that the front end of his Buick was not really damaged. He stated that there were little impressions on the two knobs on each end of the bumper and a scratch on the bottom end of the bumper where the trailer hitch slipped under it.
The investigating officer testified as to the scene of the accident, although of course he was unable to give the sequence of the impacts. His testimony shows that there were six feet of skid marks left by the Studebaker, five feet of skid marks behind the Dodge and fifteen feet of skid marks behind the Buick. The Ford traveled six feet from the point of collision. The Ford came to rest at a distance of six feet in front of the Studebaker, and the Studebaker, Dodge and Buick came to rest against one another in that order. We can assume from his testimony that there were no skid marks made by the Ford.
Mr. John B. Alexander was an eye-witness to the accidents. He testified that he was in the left lane proceeding southerly at a distance of approximately twelve feet diagonally ahead of the Ford when the accident happened. At the time, he was stopped for a red light. Mr. Alexander testified that the Ford came to a stop or almost a stop immediately prior to the first impact. According to his testimony, the Studebaker truck could have stopped before hitting the Ford had it not been for the fact that the Dodge hit the Studebaker. He further stated that the Buick hit the Dodge, which in turn hit the Studebaker, but that as a result of the Buick impact, the Studebaker did not again hit the Ford. According to Mr. Alexander’s testimony, the sequence of the impacts was as follows: the Dodge first hit the Studebaker throwing it against the Ford; then the Buick hit the Dodge, throwing the Dodge against the Studebaker, but this did *330 not cause the Studebaker to again hit the Ford. According to' his testimony and the testimony of Donald Cowart, had it not been for the Dodge hitting the Studebaker, the Studebaker could have stopped without hitting the Ford.
Now we are faced with a condition where the petitioner who was driving the Ford sues the operators and their insurers of the three following vehicles for damages. It appears to us that the intention of petitioner to make the left turn and purchase a newspaper had nothing whatsoever to do with the accident. According to her testimony, she was to pull into a crossway and clear the left lane of traffic before purchasing this newspaper. Although the defendants have made much of the fact that she was either stopped or almost stopped at the time of the accident, we feel that this adds very little in determining the question presented. It is true that the speed limit at the scene of the accident was 60 miles per hour and that petitioner was proceeding in the left or high speed lane of traffic. However, we must consider the facts as they were at the time of the accident.
The record shows that three of the vehicles had stopped for a red light just seconds before the accident. The fourth vehicle was proceeding towards the red light and the driver thereof knew that the other vehicles were stopped for the light. The petitioner started off at a speed of five miles per hour and maintained this speed until she was struck in the rear, according to her own testimony. Even were we to assume that her speed was greater than five miles per hour, according to the testimony of all the witnesses, it could not have been very much greater. At least we feel safe in assuming that she was not going more than ten miles per hour which is a very slow speed. Her stopping from such a slow speed, if she did stop, did not present such an “iron curtain” to the drivers following her as would make her liable for the accident. It must have been a gradual stop because there are no tire marks indicating a skidding or sudden strong application of the brakes. Of course, it was incumbent upon the following drivers to have their vehicles under such control as to be in a position to stop under the circumstances presented and it appears to this Court, that, according to the testimony of Donald Cowart and John B. Alexander, the Studebaker could have stopped. It appears to us that the damages to the Ford driven by petitioner were caused by the negligence of Duane Portero, the driver of the Dodge pickup truck, who had not such control over his vehicle as he should have had under the circumstances of this case. The record shows that there was no blow to the petitioner’s vehicle as a result of the impact between the Buick and the Dodge.
Now the situation here is not one where the lead car suddenly turned left into the lane of traffic occupied by the other cars so as to render petitioner liable for attempting to make a left hand turn in the face of approaching traffic from his rear. Petitioner had been in the left hand lane of traffic for some time prior to the accident. It appears to us that this case comes under the doctrine as set forth in Gandy v. Arrant, La.App., 50 So.2d 676, 678 wherein the Court said:
“The highway upon which this accident occurred is a busy one, and it is not unusual for cars traveling on same to become involved in what plaintiffs’ petition described as a ‘line of traffic.’ When such a line of vehicles is proceeding along the highway, it is the duty of each driver to so regulate the speed of his own automobile and the distance at which he follows the vehicle ahead, and to maintain such a lookout and keep his vehicle under such control as to meet the usual traffic developments. * * * ”
See also Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165 and Le Brun v. *331 American Paper Manufacturing Co., La. App., 41 So.2d 94.
Louisiana Statutes Annotated-Revised Statutes, Title 32, Section 234 provides as follows:
“The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway.”
We feel that the evidence clearly shows that the damages to petitioner’s vehicle and to the person of petitioner, were caused solely by the negligence of the defendant, Duane Portero, who was driving the Dodge pickup truck. As the blow to the Ford owned by petitioner was not caused by the negligence of the drivers of the Studebaker or Buick, the suit as it concerns said parties will be dismissed.
Petitioner Johnece Lee Lejeune itemizes her damages for personal injuries at $30,000 for physical pain and suffering and impairment of bodily functions plus $30,000 for mental pain and anguish, making a total of personal injuries in the sum of $60,000. Mr. Lejeune claims damages in the amount of $60,000 for loss of wages and earning capacities of his wife and loss of material assistance, hospital and medical bills, past and future, at $10,000, and damages to his automobile at $250.
The medical testimony as supplied by Dr. G. H. St. Dizier, a general practitioner, and Dr. J. Willard Dowell, an orthopedic surgeon, establishes that Mrs. Lejeune incurred cervical muscle sprain and a lum-brosacral sprain as a result of the accident. Her injuries were not noticed immediately following the accident, however, she claims that she had a pain in the upper portion of the back and the shoulder during the night following the accident. She was first examined by Dr. St. Dizier approximately one week after the accident. She had no period of hospitalization, however, she was required to rest on a hard mattress and was given drugs. Both of these doctors testified that the x-rays were negative and that there were no objective symptoms. Both doctors agreed that at the time of the trial petitioner had satisfactorily recovered from these injuries and that there was no disability. We find no evidence in the record as to the bill of Dr. St. Dizier, however, Dr. Willard Dowell, an orthopedic surgeon who examined petitioner on two occasions, testified that his bill was in the sum of $50. The evidence shows that the drugs administered to petitioner as a result of the accident were in the total amount of $114.76.
Petitioner further claims that because of the accident she is now of a very nervous condition, and often becomes irritated at her children or any small occurrence. Dr. St. Dizier testified that petitioner was of a nervous nature prior to the accident, and that evidence indicates that some of this nervous condition appeared while petitioner and her husband were building a home sometime before the accident.
Two psychiatrists testified as to the present emotional status of Mrs. Lejeune. Dr. Sparkman Wyatt testified that he first saw petitioner on June 30th, 1956, at which time she was in a very nervous condition and was close to a real breakdown. He stated that she was suffering from “reactive depression”, which is an emotional depression caused by some emotional shock or trauma. At the time of the trial, Dr. Wyatt had seen petitioner some forty-two times and testified that his bill to date was in the total amount of $1,130. He further stated that she would probably require treatment for one or two years and that her doctor bill would run from two to five thousand dollars.
' The other psychiatrist who saw petitioner was Dr. Robert M. Galliland. He examined petitioner on November 26th, 1956, and on February 7th, 1957. Both he and Dr. Wyatt agreed that petitioner was in’ a state of mental depression which was probably caused, or aggravated, by the *332 accident of May 8, 1956. They both agreed that petitioner has reacted satisfactorily to treatment, but that further treatment is necessary. Both doctors claim that a settlement of this case would result in great improvement of petitioner’s emotional status, but they did state definitely that petitioner’s complaints are real, and that her present emotional depression was caused or aggravated as a result of the accident.
By stipulation, two estimates of the property damages to petitioner’s car were introduced into evidence. The lowest of these estimates was in the sum of $125.55.
Under the circumstances, we believe that petitioner suffered a slight injury to her back as a result of the accident, which injury, however slight, is intensified insofar as petitioner is concerned because of her emotional instability which was either caused or greatly aggravated as a result of the accident. We believe that an award to petitioner, Mrs. Johnece Lee Lejeune, in the amount of $3,500 will be adequate.
As to the damages to Mr. Lejeune, the record shows that the accident has cost him $114.76 for drugs, $100 for Dr. Galli-land’s services, $50 for Dr. Dowell’s services, and $1,130, to date, for the services of Dr. Wyatt. In addition, the estimate of damages to his car are in the amount of $125.55, for a total of $1,520.31. The record certainly discloses that further treatment will be required by Mrs. Le-jeune, and we feel that an award in favor of petitioner Mr. Lejeune in the amount of $2,500 would be adequate.
As to the amount of damages that the petitioner claims for loss of wages and earning capacity of his wife, we do not believe that such is substantiated by the record. The evidence discloses that petitioner had worked previously for certain employers but that she had done no such work for a period of two or three months prior to the accident. Prior to that time, she had worked only part time because of the small children whom it was necessary that she care for.
For the reasons hereinabove assigned, the judgment of the Lower Court, insofar as it applies to defendants, Donald Willie Cowart and his insurer, U. S. Fidelity & Guaranty Company, and Howard J. Helmke and his insurer, Delta Fire and Casualty Company, will be affirmed. The judgment of the Lower Court, as it applies to Duane L. Portero, his employer, Robert E. Wall, and North River Insurance Company, will be reversed, and there is hereby entered judgment in favor of petitioner, Mrs. Johnece Lee Lejeune, and against said defendants, jointly and severally, in the full sum of $3,500 and there is judgment in favor of petitioner, Noel F. Lejeune, Jr., and against said defendants, jointly and severally, in the amount of $2,500 all with legal interest from judicial demand until paid. All costs are to be paid by the defendants cast in judgment.
Affirmed in part; reversed in part.