LANDRY, Judge.
This is an action in tort by Thomas Carl Wagner, individually and on behalf of his minor son, Charles Dean Wagner, claiming damages and medical expense allegedly sustained and incurred as the result of injuries received by the son in an accident which happened when a motor scooter being operated by young Wagner collided with the rear of a pickup truck owned by plaintiff-father and being operated at the time by an acquaintance of the injured plaintiff with the consent of the owner. Named sole defendant in the suit is The Travelers Indemnity Company, (sometimes hereinafter referred to simply as “Travelers”), insurer of the pickup truck. After trial on the merits below, the Honorable Trial Court rendered judgment rejecting *290 plaintiffs individual demands for medical expense but awarding judgment in favor of plaintiff, on behalf of the minor son, in the sum of $5,000.00. From this adverse judgment defendant has appealed. Plaintiff has neither appealed nor answered defendant’s appeal.
Learned counsel for plaintiff concedes recovery of the senior Wagner is barred by his contributory negligence in permitting the vehicle in question to be operated upon the public highway with defective equipment, namely, a nonfunctioning stop light.
It is stipulated in the record that in the event liability attaches herein, plaintiff is entitled to judgment on behalf of his son in the sum of $5,000.00, the limit of appellant’s liability under its policy. The sole issue before the Court, therefore, is the liability vel non of defendant insurer.
In substance plaintiffs’ petition alleges the accident occurred because of the negligence of James Alton Daniels, driver of the pickup truck, in stopping said vehicle upon a public highway suddenly and abruptly, without signal or warning, despite his awareness of the presence of the following vehicle, namely, the motor scooter being operated by young Wagner.
Appellant defends the action alleging its insured driver was free of negligence of any character whatsoever and further averring the accident occurred solely because of the negligence of the Wagner youth in following the pickup truck too closely and failing to maintain a proper lookout. Alternatively, defendant pleads contributory negligence on the part of young Wagner in the respects mentioned.
Except as hereinafter otherwise indicated there is little dispute regarding the circumstances surrounding the accident.
It is shown that on the evening of March 27, 1964, Charles Dean Wagner, accompanied by his acquaintances, James Alton Daniels and Russell Hutchinson, all of whom were then 16 years of age, drove from their homes to a camp owned by Wagner’s father to spend the night. The trip was made in a pickup truck owned by the elder Wagner who consented to the vehicle’s use for the indicated purpose. In addition to such gear and paraphernalia normally taken for such an occasion, the boys brought along a motor scooter belonging to young Wagner, the scooter being transported in the truck.
At approximately 10:00 A.M. the following morning, March 28, 1964, the boys commenced their return trip home after first having agreed they would use the truck to test the speedometer of the scooter for accuracy. It was agreed Wagner would ride the scooter ahead of the truck which would drive at a speed of 40 miles per hour thus enabling Wagner to determine the correctness of the speedometer reading of the scooter. At some undisclosed point on the return trip the planned test commenced on a gravel road. Young Wagner proceeded ahead of the truck on the scooter and after having driven in this manner for some time concluded the speedometer of the scooter indicated the correct miles per hour. Thereafter, a switch was made in that Daniels operated the scooter and Wagner drove the truck. The test conducted by Daniels likewise revealed the speedometer of the scooter to be functioning correctly. Wagner stopped the truck and again assumed operation of the scooter. At this juncture it is worthy to note that at the trial the three companions testified the purpose of the tests were merely to check the scooter’s speedometer for accuracy. However, in a written statement given by Daniels approximately two weeks following the accident (which written statement will hereinafter be considered in some detail), Daniels stated that when Wagner stopped the truck and again boarded the scooter Wagner stated he wanted to see how fast the scooter would travel.
When Wagner resumed operation of the scooter he assumed the lead proceeding ahead of the truck driven by Daniels. *291 The vehicles proceeded thusly for some distance along the gravel road until the junction of a blacktopped highway was reached. At this point the truck passed the scooter and proceeded along the improved highway ahead of the scooter for approximately one mile. Daniels brought the truck to a stop in its proper lane of travel and within a few seconds thereafter Wagner’s scooter collided with the rear of the parked vehicle.
Able counsel for plaintiff maintains the record establishes that the truck passed the scooter and was immediately brought to a sudden unexpected stop thus precipitating the accident. Conversely, learned counsel for appellant maintains the truck was brought to a normal stop in its proper lane of travel and was struck from the rear because of the negligence and inattention of young Wagner in following too closely behind and in looking at the speedometer of the scooter rather than watching the truck ahead which he had reason to know would stop to pick him up.
From the foregoing it will be readily observed that purely factual considerations are presented by the instant appeal consequently consideration of the evidence in some detail is necessitated to resolve the controversy.
Russell Hutchinson, a guest passenger in the truck being driven by Daniels at the time of the accident, in substance testified that immediately prior to the collision Daniels was proceeding ahead of the scooter at a speed of about 45 miles per hour, tie characterized the nature of the stop as “pretty quick — not real slow, but not creeping.” He stated further that the stop was not sufficiently abrupt to throw him forward in the truck and neither did it cause the tires of the truck to skid. In addition he testified the truck stopped in its own lane and that there were no vehicles approaching from the opposite direction. He estimated that approximately two seconds elapsed from the time the truck came to a complete stop until the impact occurred.
James Alton Daniels testified that upon leaving the camp he proceeded to drive the truck ahead of Wagner so that the latter could check the speedometer of the scooter. After a while they changed vehicles during which interval he, Alton, drove the scooter behind the truck for an estimated distance of 200 yards. He .and Wagner again exchanged vehicles at which time Wagner remained in the lead until they reached the blacktopped highway. At the highway, Alton regained the lead, looked in his rear view mirror and observed Wagner coming along behind and proceeded forward at a speed of about 45 miles per hour. He never looked back again and after proceeding about a mile brought the truck to a stop in its proper lane of travel. In his testimony at the trial he stated he gave no signal of his intent to stop and in effect stated his stop was neither real sudden nor real slow but a little more sudden than a normal stop. He conceded the truck stopped without skidding its tires and came to rest in its proper lane of travel. He further acknowledged that after the truck stopped he had “a few words” with his companion, Hutchinson, before the impact but that the interval was not sufficient for them to carry on much of a conversation.
However, in a statement given defendant’s adjuster, Gerald Webre, approximately two weeks following the accident, Daniels stated that after passing the scooter on the blacktopped highway he looked in his rear view mirror and saw Wagner a good distance behind. He then began slowing down gradually and came to a complete stop in his proper lane. His statement further relates that after stopping the truck he looked in his rear view mirror and saw Wagner about 75 to 100 yards to the rear. Next the statement declares he could not tell whether Wagner was looking ahead or at his speedometer because the bars on the back of the truck some- *292 wliat obstructed his view. The statement acknowledges that all Daniels could see was the scooter approaching from the rear and that while he and Hutchinson were talking and waiting for Wagner to catch up, the first thing he knew the truck was struck from the rear. The narration given the adjuster next proceeds to relate that when Daniels and Hutchinson went to Wagner’s aid, they found the scooter on Wagner’s leg and Wagner told them he was looking at his speedometer and glanced up right before hitting the truck.
In his testimony before the trial court Daniels in effect stated he did not recall telling the adjuster he brought the truck to a gradual stop. He did not recall Wagner stating that he was looking at his speedometer just before the impact and neither did he remember reading the statement although his signature appears thereon and the concluding paragraph thereof recites that he read the statement and that it was true and correct.
The testimony of the Wagner lad is to the effect that the test was to check the accuracy of the speedometer of the scooter, tie acknowledged that after arriving at the blacktop road the truck took the lead and that he followed along at a distance of about 20 yards proceeding at a speed of approximately 40 miles per hour. According to Wagner he was only about 10 feet from the rear of the truck when he realized it was stopped and he did not have time to swerve or apply his brakes. A fair analysis of his testimony is that he was too close to do anything to avoid the accident when he realized a collision was imminent. He denied telling Daniels and Hutchinson that he was looking at his speedometer instead of looking ahead.
Astute counsel for plaintiff attempted to show the statement given by Daniels to the adjuster following the accident was obtained by threats of criminal prosecution and intimidation. Our careful perusal of the record fails to disclose such to be the case. Webre testified that when the statement was obtained he went to Daniels’ home and requested the boy to accompany him to the office of a notary so that a statement could be taken from him regarding the occurrence of the accident. Daniels readily agreed and went with Webre to the office of the notary. It developed, however, the notary was a friend of Wagner’s family and declined to witness the statement on this account. A disinterested witness, Richard Neal, was procured and he attested Daniels’ signature to the statement. Daniels acknowledged that he was afraid he might be prosecuted as a result of the accident but freely admitted Webre made no such threat or otherwise attempted to intimidate him into making the statement. We have no doubt but that Daniels’ statement was freely and voluntarily given. He initialed each and every page in addition to several corrections appearing thereon and signed the statement containing an acknowledgment its recitations were true and correct.
Pretermitting all consideration of the alleged negligence of Daniels, we unhesitatingly conclude our learned brother below erred in failing to find young Wagner guilty of contributory negligence barring his recovery.
It cannot be disputed that Wagner was fully aware his companion would stop the truck after the contemplated test was completed. LSA-R.S. 32:81A provides in clear terms that the driver of a motor vehicle shall not follow another vehicle more closely than is reasonably prudent in view of the speed of the vehicle and attending circumstances. It is settled law that the driver of the following vehicle must refrain from following more closely than is reasonable and prudent, attending circumstances considered. Emmons v. Bertucci, La.App., 163 So.2d 814. It is likewise well settled that the driver of a following vehicle must exercise care, must keep a lookout ahead, must keep a safe distance behind and must maintain control of his vehicle such that he can avoid col *293 lision with the car ahead so long as the preceding motorist is driving properly. Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165.
 Also applicable to the case at bar is the well established rule that a motorist is under a continuing duty to maintain a proper lookout and must always keep an alert eye upon preceding traffic. Failure to observe this cardinal principle bars the motorist’s recovery where such failure constitutes the proximate cause of an accident. Jackson v. Cook, 189 La. 860, 181 So. 195; Epps v. Standard Supply & Hardware Co., La.App., 4 So.2d 790.
Knowing that Daniels would stop the truck, it was incumbent upon Wagner to be more alert than if he were following a vehicle under ordinary circumstances. Normally Wagner could assume a preceding motorist would not stop in his path but in the instant case he was fully cognizant that Daniels intended to stop and he should have kept a vigilant lookout for this eventuality. We believe the evidence clearly preponderates in favor of the conclusion Wagner was not in fact looking ahead as he should but rather was looking down at the speedometer of his scooter. The written statement of Daniels given at an unsus-picious time unequivocally attributes negligence to Wagner in failing to look ahead. Although both Wagner and Daniels contradicted the statement in their testimony given at the trial, the evidence as a whole supports the statement. By his own admission Wagner did not observe that the truck had stopped until he was only 10 feet distant therefrom. The record shows the road was straight and there was nothing to impair Wagner’s vision. Granted Daniels stopped without signal and the stop light on the rear of the truck was inoperable, nevertheless there appears no reason why Wagner, who had cause to anticipate the preceding motorist would stop to render him a service, could not have stopped in time to avoid an accident had he been looking ahead as he should. His remission m this regard constitutes contributory negligence.
Accordingly, it is ordered, adjudged and decreed that there be judgment herein in favor of defendant, The Travelers Indemnity Company, and against plaintiffs, reversing, annulling and setting aside the judgment of the trial court in favor of plaintiffs and rejecting and dismissing plaintiffs’ demand at plaintiffs’ cost.
Reversed and rendered.
REID, J., not participating.