JOHNSON, Judge.
Plaintiff, Milbon J. Jeansonne, was injured on September 4, 1963, in an automobile accident and he filed this tort action on May 1, 1964, against Ray B. Willie (hereinafter called Willie), The California Company, Gene Germany (hereinafter called Germany), Prestressed Concrete Products Co., Inc. (hereinafter called Pre-stressed Company), and American General Insurance Company (hereinafter called American General), claiming $250,000.00 damages.
The United States Fidelity & Guaranty Company (hereinafter called U.S.F. & G. Co.), as the collision insurer of plaintiff, intervened to recover the amount it had paid for property damage to plaintiff’s automobile. Liberty Mutual Insurance Company as the workmen’s compensation insurer of plaintiff’s employer, also intervened to recover compensation paid to plaintiff.
On motion filed by The California Company for summary judgment plaintiff’s suit was dismissed only as to The California Company on January 20, 1965.
By stipulation of all other parties the case was first tried and submitted in the Twenty-Fourth Judicial District Court only on the question of liability of defendants. After trial of that issue, the trial court rendered judgment on October 22, 1965, in favor of plaintiff and against Willie, “In such amount as may be determined by further proceedings.” That judgment also decreed that the suit of plaintiff be dismissed as against Prestressed Company, Germany and American General. That judgment further decreed that “* * * there be like judgment rendered herein as to intervention” of U.S.F. & G. Co., and as to the intervention of Liberty Mutual Insurance Company.
From that judgment the plaintiff, Mil-bon J. Jeansonne, intervenors, U.S.F. & G. Co., and Liberty Mutual Company, have appealed. That appeal was heard by this court on the issue of liability alone. Without deciding the issue of liability, the opinion of this court, reported at 188 So.2d 170, annulled and “* * * set aside those portions of the judgment [of the trial court rendered October 22, 1965] complained of by appellants, and that the matter be remanded to the lower court to be *228 there fully tried, the interested parties to adduce all and whatever evidence they deem sufficient and proper bearing on the question of quantum or any other untried issue of the case, after which the trial judge is directed to render judgment anew. If an appeal is then taken from that judgment this court will be in a position to properly dispose of the case with one judgment.”
On the remand of the case to the trial court testimony of plaintiff and his doctors and other medical evidence was offered at the new trial in January and February, 1967. On June 28, 1967, the trial court rendered a new judgment awarding plaintiff the sum of $50,000.00 for personal injuries and $60,000.00 additional for loss of earning capacity. Therefore, that judgment was in favor of plaintiff and against defendant Willie in the sum of $110,000.00, with legal interest from judicial demand. The judgment was further in favor of defendants Prestressed Company, Germany and American General and against the plaintiff, dismissing plaintiff’s suit against them. There was further judgment in favor of intervenor, U.S.F. & G. Co., the collision carrier of plaintiff, and against Willie in the sum of $1,065.00, and in favor of Prestressed Company, Germany and American General and against intervenor U.S.F. & G. Co., dismissing the intervention against them. There was further judgment in favor of Liberty Mutual Insurance Company, the workmen’s compensation insurer of plaintiff, and against Willie in the sum of $9,814.00, together with legal interest from date of judicial demand, and in favor of Prestressed Company, Germany and American General dismissing this intervention as against them. The fees of expert witnesses were fixed at $100.00 each and taxed as costs, all costs to be paid by Willie.
This case now comes before this court on the appeal of plaintiff and U.S.F. & G. Co., and Liberty Mutual Insurance Company, intervenors, who appeal from the portions of the judgment which are in favor of Prestressed Company, Germany and American General.
The accident occurred on the Lake Pontchartrain causeway at the south drawbridge. The bascule of the drawbridge is about 20 feet above the level of the causeway. The drawbridge is 75 feet long. The bridge and 40 feet at each end of it constitute about 155 feet of level roadway. The approaches leading from the causeway to that level stretch at the bascule from the north and from the south are about 280 feet each. There are electric signals, lights, signs and barricades placed at strategic intervals along the causeway as one approaches the bridge from both directions. These electric devices, signs and barricades can be seen unlighted by travelers but they are not activated by electric current unless there is some emergency or because the drawbridge is open. These warning devices were not in operation at the time of this accident. At the level stretch at the top of the bridge the floor of the causeway is widened to accommodate a small house near the southwest portion of the widened stretch and there are spaces for one or two cars to be parked at each of the four corners of that level stretch in the widened area. These parking spaces are so arranged that a car cannot head into them but a car must go past them and back into the space to park out of the traveled portion of the roadway.
Prestressed Company was doing some contract work under the causeway at the south drawbridge. Earlier on the morning of the day of this accident several workmen had gone there. Their work below the roadway did not interfere with traffic. Germany was an employee of the Prestressed Company and this work at the drawbridge was being done under his supervision. Germany did not accompany the workmen to the bridge that morning but arrived later, about 7:00 o’clock in a Prestressed Company truck-trailer, driven by another employee.
The plant of Prestressed Company is located north of the lake at Mandeville. *229 Germany rode to the south drawbridge in a truck-trailer driven by another employee who was going to New Orleans on other company business. As they approached the south drawbridge Germany instructed the driver not to stop but to slow down and he would jump out. As the truck slowed down, Germany opened the cab door and stood on the fender, which was approximately 14 inches wide. When the truck was moving about 10 miles per hour, or less, Germany jumped to the ground on the run. The truck-trailer without stopping then accelerated its speed to continue toward New Orleans. After Germany jumped out and started to walk south on the west side of the bridge toward the bridge tender’s house, a white Chevrolet driven by one C. W. Parker passed him. The Chevrolet had slowed down behind the Prestressed Company truck when Germany jumped out. Germany said he heard “rubber burning.” He turned in time to see a pickup truck (driven by Willie behind Parker’s Chevrolet) that appeared to be out of control skidding sideways into the north bound lane of traffic where it struck a Volkswagen headon. The Volkswagen was being driven by plaintiff. Plaintiff was badly injured at that time. Germany’s description of the sequence of events clearly indicates that there was no emergency which caused Willie, the driver of the pickup truck referred to, to skid into the north bound lane and strike plaintiff’s car. Germany said the Prestressed truck was half way down the slope to the south when the white Chevrolet passed him going south as he walked south toward the bridge tender’s shack before he heard the tires of Willie’s truck “burning rubber.”
Parker, driver of the white Chevrolet behind the Prestressed Company truck-trailer, testified that as he traveled south along the causeway he drove about 60 miles an hour; that as he approached the incline to the drawbridge he saw the Prestressed Company truck-trailer ahead of him; that he did not realize it was stopped until he got within 75 to 100 feet of it when he put on his brakes and started sliding but “did not slide too far”; that the Willie pickup truck was behind him and that Willie “hit his brakes too”; that he thought the Willie pickup truck behind him was going to strike his car; that he let up his brakes to pick up speed to get out of the way of the pickup truck and he had to hit his brakes again to keep from colliding with the Pre-stressed Company truck-trailer; that his car got within about 10 feet of the Prestressed Company truck-trailer when he thinks he stopped, but he is not sure that he stopped his car; that the Prestressed Company truck-trailer moved away; that the pickup truck did not strike his Chevrolet and he did not see or hear it strike the Volkswagen.
Plaintiff testified that he has been driving across the causeway every Monday and Tuesday for seven years — ever since the causeway was built; on the morning of this accident he was driving a Volkswagen at about 45 miles per hour; that as he approached the drawbridge he noticed a truck stop momentarily on top of the bridge and then drive south down the slope toward New Orleans; that he slowed down a little on the flat part of the bridge but does not remember anything else until he regained consciousness after the accident.
Defendant Willie testified that as he drove south on the causeway, about 50 to 55 miles an hour approaching the drawbridge, the white Chevrolet had to stop in front of him; that as he got to the top of the bridge he was almost stopped and when his car hit the iron grating forming the floor of the bridge his car wanted to skid and that is when he had the collision. He does not know where the collision took place in the road but after the collision he went to plaintiff’s car and he thinks plaintiff’s car was in plaintiff’s traffic lane, though he is not sure.
The trial court found plaintiff free of any negligence and we agree completely with that finding.
Counsel for plaintiff and counsel for defendant Willie contend that the driver of the Prestressed Company truck-trailer was *230 guilty of negligence in violating the regulations against stopping on the causeway and in their failure to radio ahead to the bridge tender to have him activate the emergency lights, signals and barricades to enable the Prestressed Company truck to stop to let Germany out of the truck-trailer. The trial court said that Germany, for the Prestressed Company, could have employed a safer method than he did to alight from the truck at the bridge but the court found no negligence constituting the proximate cause of the accident on the part of Germany or the Prestressed Company, and in that holding we also agree. The fact that Parker testified that he and Willie both lived north of the lake and had discussed the case several times since the accident; that Parker asked Willie to pick him up and to bring him to New Orleans to attend the trial of this case, and that they rode together to and from the trial, leads us to interpret Parker’s testimony to mean that Parker actually had no difficulty in controlling his car to avoid colliding with the Prestressed truck-trailer on that occasion. We believe there was no necessity to radio ahead to stop all traffic to permit Germany to step out of his truck. Mr. Leonard M. Lambert, assistant manager of the Greater New Orleans Expressway, testified that the bridge employees are not required to lend such assistance to contract workers and the contractors and workers must do their own flagging. The manner of Germany’s alighting from the truck was a reasonable and safe procedure and if Willie had been on the alert, as Parker driving the Chevrolet was, the accident would not have happened. The Pre-stressed Company truck-trailer did not make a sudden or abrupt stop to endanger traffic following it. We also agree with the trial court in its finding that defendant Willie was not keeping a proper lookout ahead, did not allow sufficient distance between his truck and the Parker Chevrolet to enable him to control his truck in decreasing his speed. There are so many cases which have outlined the duty of the driver of a vehicle following other vehicles on the highway that it is wholly unnecessary to attempt to cite all of the authorities. A few are: Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165; Viator v. Gilbert, La.App., 206 So.2d 106; Bouis v. Employers Liability Assurance Corporation, La.App., 160 So.2d 36; McNulty v. Toye Bros. Yellow Cab Co., La.App., 73 So.2d 23; Max Barnett Furniture Co. v. Barrosse, La.App., 70 So.2d 886; Crow v. Alesi, La.App., 55 So.2d 16; Gandy v. Arrant, La.App., 50 So.2d 676; McDaniel v. Capitol Transport Co., La.App., 35 So.2d 38; Vienne v. Chalona, La.App., 28 So.2d 154; Roberson v. Rodriguez, La.App., 186 So. 853; Hill v. Knight, La.App., 163 So. 727; Roberts v. Eason, 6 La.App. 703.
Full explanation of plaintiff’s injuries, pain, suffering and resulting disability would cover a number of pages. We quote the following succinct statement made by the trial judge, which we believe will serve to properly indicate the very serious and permanent nature of plaintiff’s injuries:
“As a result of the collision the plaintiff, Jeansonne, suffered very severe injuries. He was knocked unconscious and was brought to the hospital where he was found to have a fractured and dislocated hip, several fractured ribs, traumatic inflammation around the heart, multiple bruises, contusions and lacerations, together with complications arising as a result of all of these injuries. He has undergone long and expensive hospitalization and treatments for his various injuries to such extent that he has been totally incapacitated for several years and has suffered severe pain during that period. He is still disabled and has a stiff hip as a result of a fusion operation which has been performed. As a result of all of this history of injury and treatment, the plaintiff is disabled from work of most kinds and can only work in a few particular ways. He certainly could not return to the type of work he formerly did, nor engage in any type of job *231 in which he was required to sit or drive an automobile, or for that matter one involving physical exertion.”
For these reasons, the judgment of the trial court appealed from is affirmed, costs to be paid by defendant Ray B. Willie.
Affirmed.