JONES, Judge.
Factual issues only are presented in this appeal by plaintiffs whose demands for damages sustained by them as a result of a pickup truck-motorcycle collision were rejected below. We affirm.
The accident occurred at the intersection of E. Preston and Audubon Streets in Shreveport. Audubon intersects E. Preston on the south side creating a T-intersection. E. Preston at the site of the accident and for several hundred feet east and west is 44 feet wide. Although this unusual width is sufficient for a four lane street, a City of Shreveport traffic engineer established that E. Preston is only a two lane street divided in the center by double yellow lines at the site of the accident, and the area adjacent to the curb is available for parking.
Plaintiff, Valerie Rothring (hereafter Valerie), who was aware E; Preston had only one lane available for eastbound traffic, was proceeding east on E. Preston on her motorcycle one and a half to two motorcycle lengths behind, and to the right of an eastbound truck operated by defendant, Wilfred L. Bennett. Bennett commenced a right turn into Audubon but prior to the completion of his turn, Valerie’s motorcycle collided with his right front. Valerie testified Bennett commenced his right turn from the extreme left side of the portion of E. Preston located south of the double yellow lines, without giving any signal of his intention to turn and in the process of turning, he crossed her path of travel. She took unsuccessful evasive action by pulling to the right and collided with Bennett’s truck.
Bennett testified he commenced his right hand turn while traveling down the right hand side of his eastbound lane with the right side of his truck four or five feet from the curb and the left side of his truck 10 feet from the centerline. Bennett testified he had activated his right blinker signal a considerable distance west of the point where he commenced his turn, and although he maintained frequent observations in his rearview mirrors (one on the left and the other inside his truck), he never observed the motorcycle and was unaware of its presence until the collision occurred.
At the time of the collision, Samuel E. Smith was proceeding north on Audubon approximately 75 feet south of Audubon’s intersection with E. Preston, and testified he saw Bennett in the process of making the turn and that Bennett’s truck was near the curb on the south side of E. Preston. He further testified as Bennett was in the process of making the turn, the motorcycle suddenly appeared between the curb and Bennett’s truck. Smith said there was very little room between the curb and the truck at the time the motorcycle appeared. He failed to observe whether Bennett’s right turn blinker was on.
The trial court found Bennett commenced his right turn while near the curb on the south side of E. Preston. However, the *1176 trial court found Bennett was negligent for failing to signal his intention to turn. The trial court also found Valerie, when Bennett commenced his turn, was traveling too close to the rear of the truck and failed to maintain a proper lookout which caused her to be forced to attempt to avoid the accident by pulling to the right, or while traveling behind the slow-moving truck, she attempted to pass it on the right at the time the truck commenced its right turn, and in either event she was guilty of negligence which contributed to the accident.
While the trial court made no specific finding with regard to plaintiffs’ plea of last clear chance, the fact that plaintiffs’ damages were rejected constitutes a holding that Bennett did not have the last clear chance to avoid the accident. Valerie was traveling, according to her testimony, very close to the rear and to the right of the truck, a position where Bennett was unable to observe her in spite of his frequent observations in his rearview mirrors. Bennett had no reason to anticipate that a following motorist would travel to his right thereby using a portion of E. Preston as a second eastbound lane. His inability to see her in spite of these observations, effectively denied him an opportunity to avoid the accident because he was unaware of her presence.
On appeal plaintiffs assert as error, the trial court’s failure to hold Bennett’s negligence to be the sole cause of the accident, or that Bennett had the last clear chance to avoid same.
In Rea v. State Farm Mutual Automobile Insurance Company, 149 So.2d 136 (La.App., 2d Cir. 1963), the court held the last clear chance doctrine was inapplicable where a right-turning motorist was unable to observe in his rearview mirror another vehicle traveling to his right on a blacktop area on the shoulder which the court referred to as a parking area.
In Coleman v. Van Dyke, 277 So.2d 709 (La.App., 2d Cir. 1973), defendant motorist, while being followed very closely by a motorcycle operated by plaintiff who from time to time traveled along the right side of defendant’s automobile, turned right into a parking lot, at which time the motorcycle collided with the right front of defendant’s automobile. The court made the following observations with regard to the duty of a following motorist:
“A motorist approaching a motor vehicle from the rear while both vehicles are traveling in the same direction is under a duty to exercise great care, sometimes referred to as extraordinary care. Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165 (1945); ....
“As was observed by the Supreme Court in the Burns case, in holding negligent the driver of an overtaking vehicle who failed to maintain a proper lookout and to observe the slowing of a forward vehicle in preparation of a turning movement: ‘It is the duty of the driver operating an automobile, upon approaching another automobile from the rear while both cars are traveling in the same direction, to exercise a great deal of care. He must look out for the person ahead, realizing that that person is engaged in handling a high-powered machine requiring constant attention and that his lookout is forward and not backward. The driver of the rear car must keep a safe distance behind the front car and must have his machine under such control as to avoid injury to the car ahead or to his own car so long as the driver of the front car is driving in accordance with his rights.’ 23 So.2d 165, 169.” Id. page 711.
The court found the motorcyclist was guilty of negligence in following the forward vehicle too closely and failing to maintain a proper lookout, and in attempting to pass defendant’s vehicle to its right. The facts in Coleman are very similar to those in the instant case. The findings of negligence in Coleman are also very similar to the findings of negligence of the trial court with reference to Valerie Rothring.
Plaintiffs cited numerous decisions in their brief, all of which are distinguishable on the facts from the instant case, and a review of these would serve no useful purpose.
*1177 It is significant to recognize the trial court was essentially faced with the evaluation of the testimony of these three witnesses to the accident, along with the testimony of the investigating officers, in arriving at its decision rejecting plaintiffs’ demands. The court in written reasons made the following finding with regard to Valerie’s negligence:
“But by the same token, I think the young lady was following too close and maybe looking off and did one of several things; either thought she had room to pass — the man was going a little slow— and got inside of him, and he turned right, or else she was too close when he started to turn right, and she took evasive action and went to the inside thinking she had a better chance going there than the outside. I don’t know. It is difficult to say, but I think one of either of those two things happened.”
In Canter v. Koehring Company, 283 So.2d 716 (La.1973) the court made the following observations with regard to the weight a trial judge’s opinion should be given:
“ * * * [Wjhere there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Id. p. 724.
There is ample evidence in the record to sustain the findings of the trial judge and we affirm his decision at plaintiffs’ cost.