SAVOY, Judge.
This is a companion case to the case of Chatagnier v. Allstate Insurance Company et al., 248 So.2d 590 (La.App. 3 Cir. 1971), decided this date. See that case for a discussion of the facts and the holding as to liability.
The remaining issue is that of quantum. The district court awarded plaintiff, individually, medical expenses, less credit for medical payments made, and an award of $2,500.00 for and on behalf of his minor daughter, Judy Oliver. Plaintiff maintains the award for and on behalf of Judy Oliver should be increased, and defendants maintain that the award is excessive and should be reduced. There is no contention that the amount awarded for specials was in error.
Judy Oliver saw Dr. A. L. Clark, a general practitioner of Iowa, on the day of the accident. He found her to have abrasions *589 and contusions of the chin and the left knee, a contusion and hematoma of the scalp and a neck injury. He noted muscle spasm and limitation of motion of the neck. Dr. Clark prescribed medication and advised her to use a heating pad and to limit her activities. On June 22, 1968, she had pain on motion of her neck, but with little muscle spasm. He found only soreness in the neck on the visit on July 22, 1968, and on August 6, 1968, he discharged her, telling her to gradually resume her activities, but to be careful about doing anything violent. On September 14, 1968, while combing her hair, she felt severe pain to her neck, and Dr. Clark admitted her to the hospital for treatments in consultation with Dr. George P. Schneider, an orthopedic surgeon. She stayed in the hospital from September 14th until September 23rd, 1968. She wore a cervical collar after leaving the hospital. Dr. Clark then saw her on September 27, October 18 and 24, November 1 and 16, and December 6, 16 and 28, 1968, and continued her on heat treatments at home and medication during this time. He gave her an excuse from vigorous physical education activities at school up until about February. Dr. Clark felt that the episode of September 14, 1968, was causally connected to the accident of June 19, 1968. He agreed that certain cheerleading activities which she engaged in had likely aggravated her condition.
Dr. Schneider saw Judy Oliver at the hospital on September 14, 1968. At that time she complained of acute pain in her neck, and some hurting in her lower back, and her right knee seemed to give way. Examination of the neck and shoulders showed tenderness with tightness over the left mid paracervical musculature. She had pain on bending, rotation and extension of her neck. X-rays showed no evidence of any pathology of the lower back, but the neck X-rays showed moderate flattening of the lordotic curve of the cervical spine, which is usually associated with muscular tightness or spasm. He felt she had residuals of a spraining injury to her neck, and placed her on an intensive routine in the hospital of traction, medication and therapy. A soft cervical collar was fitted prior to her discharge which was worn to October 3, 1968. As of the October 3, 1968, examination, he estimated Judy would need about two months of rehabilitating out of the collar before recovery would be complete. He advised her to resume her activity routine carefully and progressively. Dr. Schneider saw Judy again on December 16, 1968, and found some slight residuals.
The district court considered the evidence as to Judy’s cheerleading and other activities, and concluded from the medical that the episode of September 14, 1968, was causally connected to the accident. The district court considered that she may have participated more vigorously in certain activities than she should have, and by doing so, aggravated her condition and prolonged her recovery; however, the court felt that this was counterbalanced by her being able to participate in events that she would otherwise have missed by restricting her activities. It was thus a choice of either giving up certain desired activities on the one hand, or prolonging her recovery on the other hand.
The guidelines for modifying an award of the trial court are expressed in the recent case of Miller v. Thomas, 258 La. 285 (1971), 246 So.2d 16, at page 19, to-wit:
“From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the ‘much discretion’ accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity.
“Applying these principles to a personal injury award often presents real difficulty. The facts relating to the injuries must be collated in each case. Upon these facts, the Court must focus an informed judgment, tempered by a fair *590 recognition of the discretion vested in the trial judge or jury.”
Although the award of $2,500.00 granted for and on behalf of Judy Oliver was in the lower area of the wide range of discretion afforded the trial court, this Court finds no abuse of the discretion by the trial court; and accordingly, the award will be affirmed.
For the reasons assigned, the judgment appealed from is affirmed. All costs of appeal are assessed against Allstate Insurance Company and Walter Falloway.
Affirmed.