SAVOY, Judge.
This case and the companion case of Oliver v. Signal Insurance Company et al., 248 So.2d 588, (La.App. 3 Cir. 1971), arose out of a three car accident which occurred on June 19, 1968, in the Town of Iowa, Louisiana. Prior to the accident, three vehicles were proceeding northerly along Thompson Street or Highway 383. The lead vehicle was a 1966 Chevrolet owned by Joe O. Chatagnier and being driven by his daughter, Freída L. Chatagnier. The second car was a 1962 Ford Falcon owned by Walter Falloway and being driven by his daughter, Janet Sue Falloway. The last vehicle was a 1967 Ford Falcon owned and being driven by Lawrence Manuel. The accident occurred after Freída L. Chatagnier slowed her vehicle or stopped to offer a ride to a pedestrian. The Falloway car struck the rear of the Chatagnier car, and the Manuel car struck the rear of the Falloway car.
In the instant case, Joe O. Chatagnier sued individually, and for the use and benefit of his minor daughters, Freida L. Chatagnier and Jocelyn Chatagnier, for personal injuries and damages. Named as defendants are Walter Falloway and his insurer, Allstate Insurance Company, and Lawrence Manuel and his insurer, Signal Insurance Company, Joe O. Chatagnier *592 and his insurer, State Farm Mutual Automobile Insurance Company, were made third party defendants in the suit. This case was tried by a jury which found that the accident occurred because of the joint negligence of Freida L. Chatagnier and Janet Sue Falloway, and damages of $500.-00 were awarded to Jocelyn Chatagnier. Accordingly, judgment was rendered in favor of Joe O. Chatagnier for the use and benefit of Jocelyn Chatagnier in the amount of $500.00, rejecting all other demands of the plaintiff. The third party demand of Allstate Insurance Company and Walter Falloway as against State Farm Mutual Automobile Insurance Company was cast in judgment for one-half of the $500.00 award. Devolutive appeals from this judgment were taken by all parties to the suit.
In the companion case, John Oliver sued individually and for and on behalf of his daughter, Judy Oliver, for personal injuries and damages. Judy was a passenger in the Falloway car. Named as defendants in that case were Lawrence Manuel, Signal Insurance Company, and Allstate Insurance Company. Joe O. Chatagnier and State Farm Mutual Automobile Insurance Company were made third party defendants. After trial without a jury, the district court found that the sole and proximate cause of the accident was the negligence of Janet Sue Falloway; and judgment was rendered against Allstate Insurance Company in favor of plaintiff, individually, for medical expenses, less a credit for medical payments previously paid by Allstate Insurance Company, and for the use and benefit of his minor daughter, Judy Oliver, in the amount of $2,500.00. The third party demands in that suit and all claims against Lawrence Manuel and Signal Insurance Company were rejected. All parties in the companion suit, except State Farm Mutual Automobile Insurance Company, filed an appeal to this Court.
On the merits, the issues raised in both appeals are those of negligence of each of the three drivers, and those of quantum.
The record shows that the accident occurred at about 11:50 o’clock A.M. on Louisiana Highway 383 or Thompson Street in the Town of Iowa. The street or highway in the area involved is paved, and is straight and level, with a shoulder about three feet wide on the east side adjoining a ditch. The area is built-up residential except for a bulk plant located to the west of the street near the area of the accident. At the time of the accident, it was raining and the street was wet.
Just prior to the accident, all three vehicles were traveling in a northerly direction. Freida L. Chatagnier was driving her father’s 1966 Chevrolet car, and her sister, Jocelyn Chatagnier, was seated in the right front seat. Freida stopped or slowed in the northbound lane of the street to offer a ride to a pedestrian friend, and was either in a stopped position or was moving slowly forward at the time her car was struck from the rear by the Falloway car.
The Falloway car was occupied by the driver, Janet Sue Falloway, and her passengers, Brenda Bouquet and Donna King, in the front seat, and Judy Oliver in the rear seat. The occupants of the Chatag-nier and Falloway vehicles were enroute from the high school to the Chatagnier home after having completed cheerleading practice. The Falloway car ran into the rear of the Chatagnier car, and it was struck from the rear by the Manuel car. There was some dispute as to whether or not the Chatagnier car was stopped or moving at the time it was struck, and as to whether or not the impacts between the vehicles were simultaneous or some distance apart in time.
The first issue is whether or not Freida L. Chatagnier was guilty of negligence proximately causing the accident. In the instant case, the jury found her to be guilty of such negligence, but in the companion case the district court found her to be free from negligence. It is argued that Freida slowed or stopped her *593 vehicle squarely .in the lane of travel, without giving a signal showing her intentions to stop and without having checked her rearview mirror for the position of the vehicle behind her. It is maintained that the provisions of LSA-R.S. 32:64(B) and LSA-R.S. 32:141 are applicable to the facts of this case. LSA-R.S. 32:64(B) is the “slow speed” statute, and LSA-R.S. 32:141 regulates traffic stopping, standing or parking outside business or residence districts. Inasmuch as the accident occurred in a built-up residential area in the Town of Iowa, these statutes are not applicable. In the case of Reed v. City of Alexandria, 212 So.2d 286 (La.App. 3 Cir. 1968), this Court held that LSA-R.S. 32:141, Section A, expressly limits its application to a “highway outside of a business or residence district”. We further believe that LSA-R.S. 32:64, which provides the general speed law, must be interpreted in pari materia with LSA-R.S. 32:141. It would be inconsistent to conclude that a motorist could stop or park a car on the highway in a business or residence district, but could not drive at a slow rate of speed in such an area. In the case at bar the speed limit in the area was 35 miles per hour, and we find that the provisions of LSA-R.S. 32:64(B) are not applicable to that area of the street or highway involved in the accident.
The evidence shows that Freida L. Chatagnier was proceeding along the highway at a speed of approximately 25 or 30 miles an hour; that she noticed her friend, Cynthia Mallett, walking on the side of the street; and that she gradually slowed her car to offer her friend a rde. As the car neared Cynthia, Cynthia motioned them on. Then, after having either stopped or having nearly stopped, Freida continued forward about one-half to one car length and was still moving very slowly, under 10 miles an hour, when she was struck from the rear. Freida admitted that she knew the Falloway car was following her; that she did not give any hand signal that she was stopping; and that she did not observe the approaching car in the rearview mirror as she slowed down, although she knew she was being followed by the Falloway car. The record shows that the rear brake lights on the Chatagnier car were working and were observed by the occupants of the following Falloway car. The occupants of the Falloway car all confirmed the fact that the Chatagnier vehicle slowed gradually and did not stop suddenly. There was not enough room for Freida to have stopped on the shoulder of the road, although there were several driveways she could have turned into. The Chatagnier car moved a distance of about 50 feet from the point it was struck before coming to rest.
This Court finds that the evidence in this case does not support the jury’s finding of negligence on the part of Freida L. Chatagnier. She violated no law, and her actions in gradually slowing her car to pick up a pedestrian on a street in the Town of Iowa did not constitute negligence. Since her brake lights were working, it was day time, and there were no unsual circumstances, she had the right to assume the following vehicle would notice her actions under the facts of this case. Accordingly, this Court will reverse this finding of the jury and hold that Freida L. Chatagnier was not guilty of any negligence in the accident.
The next issue is whether or not Janet Sue Falloway was guilty of negligence which was a proximate cause of the accident.
Janet Sue Falloway stated she was driving her car at 35 miles per hour after she passed the railroad tracks some two blocks before the accident; that she was driving about four car lengths behind the Chatagnier car; that she noticed Freida’s brake lights and she began to apply her brakes; that her car began to skid and she applied the brakes harder, but her car skid into the forward car. She admitted that Freida slowed down gradually and gave no explanation as to why she could not have avoided the accident, except that the car skid on the street. She estimated her speed *594 at the time of the accident at 15 to 20 miles per hour. This version was substantially verified by the occupants of the Falloway car, who also testified that they were surprised that the impact was as severe as it was, indicating that the impact was probably harder than expected because of the additional impact of the vehicle from behind. This Court has little difficulty in agreeing with the findings of both the district court in the companion case and the jury in the instant case that Janet Sue Falloway was negligent in following too closely, in failing to keep a proper lookout, and/or in failing to keep her car under proper control; and that such negligence was a proximate cause of the accident.
The final issue as to liability is whether or not Lawrence Manuel was guilty of negligence which was a proximate cause of the accident.
There is some conflict as to whether the impacts were simultaneous or some seconds apart. In general, the Chatagnier sisters, Janet Sue Falloway, Brenda Bouquet, and Donna King, and a witness at the bulk plant, Percy Johnson, testified that there was only one crash. Opposed to this, Lawrence Manuel, Cynthia Mallett Boudreaux, and Judy Oliver testified that there were two separate impacts which occurred some time apart. Lawrence Manuel testified he was going 20 to 25 miles per hour following the forward vehicles, that he saw the brake lights on the car in front of him, and saw the accident. He applied his brakes when he saw the brake lights on the Falloway car, and his car skid. He was unable to turn to the left because of an oncoming vehicle. Although there was no room to the right to pull completely off the road without going into the ditch, he turned to the right at the last moment. He testified he almost came to a stop in time, and there was only a slight impact, more in the nature of a scratching-type noise as his left fender struck the rear of the Falloway car. His vehicle was damaged to the extent of $50.00. The evidence indicates that the impact of the second collision was not nearly as heavy as the first one. The Falloway car stopped at about the point it struck the Chatagnier car and may have moved one or two feet' forward from the point where it was struck by the Manuel car.
After the collision there was approximately two to three feet distance between these two vehicles when they came to a rest. This Court finds that the record adequately substantiates the holding of the jury in the instant case, and the district court in the companion case that Lawrence Manuel was not guilty of negligence which was the proximate cause of the accident. The record shows that he would have been able to have stopped his vehicle had the forward Falloway car made a normal rather than a sudden stop because of the accident.
The final issue concerns quantum. In view ■ of this Court’s holding on liability, an award for personal injuries for Freída L. Chatagnier must be fixed. Plaintiff maintains that the award of $500.00 for Jocelyn Chatagnier should be increased. Defendants maintain that the jury’s award to Jocelyn was proper and not so inadequate as to constitute manifest error, and that a fair compensation to Freída L. Chatagnier for her injuries would be a like award in the $500.00 to $750.00 range.
The record shows that the initial collision between the Chatagnier car and the Falloway car was a fairly heavy one. Both of these girls felt pain and a stiffening or drawing sensation in their necks shortly following the accident, and they were taken almost immediately to their family doctor. Dr. A. L. Clark, a, general practitioner of Iowa, found that both girls had neck injuries with soreness and muscle spasms. He prescribed identical treatments of a conservative nature, consisting of medication and the use of a heating paid. On June 22, 1968, he found Freída to still have muscle spasm. Freída returned for additional treatments with complaints of pain and muscle soreness on July 22, August 8, and *595 September 4, 1968. She was continued on medication during this period of time. She was referred to Dr. George P. Schneider for examination on the September 4th visit. Dr. Schneider advised physiotherapy which was conducted in ten treatments at a local hospital on an outpatient basis. The treatments consisted of traction, heat pads, and massages. Dr. Clark saw Freida again on October 31, 1968, and found her to be much improved. He then examined her on December 16, 1968, and finding little of any consequence, discharged her as being essentially cured as of that date. He felt she might have some small amount of discomfort thereafter, but of a minimal nature.
Dr. Clark noted that Jocelyn Chatagnier also had contusions and abrasions of the legs in addition to her neck injury. He found muscle spasm on his examination on June 19, 1968, but only soreness and tenderness of the muscles on subsequent visits. He saw her on June 22, 1968, and then on July 22, 1968. By the July visit, the injuries to her legs had healed. He saw her also on August 8, and on September 4, 1968, at which time she was also referred to Dr. Schneider for examination. On Dr. Schneider’s examination, Jocelyn was also given physiotherapy treatments in ten treatments at a local hospital on an outpatient basis. Dr. Clark saw her on October 31, 1968, and found her to be much improved. She was discharged after the December 16, 1968, visit, as having essentially recovered, although the doctor indicated she might have some mild neck pain after then on activity. Dr. Clark felt that Freida’s neck injury was possibly more se-verse than that received by Jocelyn, although their treatments were identical.
Dr. George P. Schneider, an orthopedic surgeon, examined Freida L. Chatagnier on September 17,1968. He found definite tightness of the left side of the neck. Xrays showed some flattening of the cervical spine, indicating persisting tightness of the musculature of the neck. It was his opinion that she had a sprained neck. He placer her on a conservative routine of treatment and recommended physiotherapy. He felt her problem would be resolved after about three months. Dr. Schneider saw Jocelyn on September 19, 1968. He found her to have a sprained neck. He found tightness of the neck with thickening to the right of the second and third vertebra, an intermittent soft snap audible on bending of the neck, and Xrays showed some flattening of the spine. He recommended physical therapy and indicated that several months would be required to resolve her problems. Dr. Schneider felt that continued physical activities by the two girls from the time of the accident might have aggravated their problems somewhat.
The record shows that neither of the girls had ever suffered from a prior neck injury. Both girls continued some of their activities after the injuries to a limited degree. Freida was a cheerleader in high school, and she was unable to participate actively in cheerleading and school dances until well into the basketball season. Jocelyn was a junior high school cheerleader, and her youthful activities were also restricted. Freida testified she had numerous severe headaches which accompanied her neck pains.
Considering prior awards to plaintiffs with similar injuries, this Court believes that an award to Freida in the amount of $1,500.00 would be fair and equitable. This Court finds that the jury’s award to Jocelyn of only $500.00 was an abuse of its discretion, and will amend that award by raising it to $1,500.00.
The evidence further substantiates the claim of plaintiff for medical expenses incurred of $462.44, and the deductible loss to his car of $100.00, totalling $562.44.
For the reasons assigned the judgment appealed from is reversed insofar as it grants judgment against third party defendants, Joe E. Chatagnier and State Farm Mutual Automobile Insurance Company, and all third party demands are rejected and dismissed. The judgment is further re *596 versed insofar as it dismisses the claims of plaintiff individually and on behalf of Freida L. Chatagnier; and judgment is hereby rendered against Allstate Insurance Company and Walter Falloway, in solido, in favor of plaintiff individually in the sum of $562.44, together with legal interest from date of judicial demand until paid; and for and on behalf of Freida L. Chatagnier in the sum of $1,500.00, together with legal interest from date of judicial demand until paid. The judgment is further amended by increasing the award for and on behalf of Jocelyn Chatagnier from $500.00 to $1,500.00. All costs in the district court and on appeal are assessed to Allstate Insurance Company and Walter Falloway. In all other respects the judgment appealed from is affirmed.
Reversed in part, amended in part and affirmed in part.