# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-811 consolidated with 12-812

**SHERMAN JOURNET**

**VERSUS**

**CLIFFORD MOUTON, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 71370 C/W 71371
HONORABLE KEITH RAYNE JULES COMEAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.

**Genovese, J., concurs in the result.**

**AFFIRMED.**

**James L. Pate**
**Jason T. Reed**
**Laborde & Neuner**
**P.O. Box 52828**
**Lafayette, LA 70505-2828**
**(337) 237-7000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Sheriff Ronnie Theriot**
    **Deputy Clint Aubrey**
    **St. Paul Fire and Marine Insurance Company**

**Kenny Layne Oliver**
**David Oliver Way**
**Oliver & Way**
**P. O. Box 82447**
**Lafayette, LA 70598-2447**
**(337) 988-3500**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Avis Budget Car Rental, LLC**

**Joslyn Renee Alex**
**Attorney at Law**
**P. O. Box 126**
**Breaux Bridge, LA 70517**
**(337) 332-1180**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Sherman Journet**

**Pride Justin Doran**
**Quincy L. Cawthorne**
**Doran & Cawthorne, P.L.L.C.**
**P. O. Box 2119**
**Opelousas, LA 70571**
**(337) 948-8008**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Sherman Journet**

**Irvin J. Celestine, Jr.**
**Attorney At Law**
**133 West Landry**
**Opelousas, LA 70570**
**(337) 407-2898**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Sherman Journet**

**GREMILLION, Judge.**

Sherman Journet appeals the summary judgment granted in favor of St. Martin Parish Sheriff Ronnie Theriot, St. Martin Parish Sheriff's Deputy Clint Aubrey, and their insurer, St. Paul Fire and Marine Insurance Company, dismissing Journet's demands against those defendants/appellants resulting from a motor vehicle accident that occurred on January 1, 2006.

## FACTS

Sherman and Paula Journet celebrated their marriage on the afternoon of December 31, 2005. Their wedding reception was held at a bar from 3:00 p.m. until around 7:00 p.m. The couple was then chauffeured around to various other establishments. Along the way, Sherman (henceforth "Journet") consumed a prodigious amount of alcohol and partook of marijuana as well. The couple returned to their home sometime after 2:00 a.m. on January 1, 2006.

The following morning between 8:30 and 9:00, Paula Journet's mother returned the couple's two children, Jaylan (age 5 at the time) and Jaleigh (then seven months old) to their home. The Journets trundled their children into a car that had been rented for Journet by his employer, Mr. Clifford Mouton, and embarked on a short journey to procure some breakfast. As the family was returning home along Louisiana Highway 328 in St. Martin Parish, Journet, who has never held a driver's license, was driving. He approached a slow-moving ambulance, which he passed on the two-lane highway. He then passed another couple of cars.

Journet also saw a Chevrolet Tahoe driven by Deputy Aubrey when it was "a few hundred feet" ahead, and before he attempted his passing maneuvers. He recognized that Aubrey's vehicle was "barely moving." He described the events thusly:

I just stayed—I didn't want to pass him up because I knew he knew me, you know, and I ain't had no license, so I stayed, you know behind him…. At the same time I started slowing down, that's when, you know, I noticed he was still going slow, and then he stopped. So, at the same time like I went to slow down, that's when I—he stopped, and that's when I wrecked at the same time, you know.

The highway was damp from a mist that was falling. Journet "slammed" on his brakes and attempted to steer around Aubrey, but aborted that maneuver when he realized a vehicle was approaching from the opposite direction. Journet's vehicle began to spin, crossed the center line, the opposing lane, entered the ditch on the opposite side of the road, and overturned.

Journet denied seeing Aubrey's brake lights or turn signal being lit at any time. Paula Journet recalled seeing Aubrey's brake lights immediately before the accident.

Aubrey had been dispatched to a residence on Highway 328 to assist an older woman who had fallen. He realized that he had passed the woman's driveway and was going to turn right into the circular driveway of a residence in order to turn around head in the opposite direction. As he turned into the driveway, Aubrey saw the Journet vehicle go past.

The official investigation of the crash was undertaken by State Trooper David Speyrer. Trooper Speyrer arrived at the scene around 9:35 a.m., approximately ten minutes after he was dispatched. He did not measure the distance between the area that Journet's vehicle entered the ditch and the point where Aubrey indicated he was turning, but he estimated it to be several hundred feet. He obtained a statement from Journet at Lafayette General Hospital, during which he noted a strong odor of alcohol on Journet's breath. Trooper Speyrer thought Journet was obviously impaired.

2

Journet suffered severe injuries in the collision, most notably a fracture and subluxation of the fourth cervical vertebrae. As a result, he was functionally rendered a quadriplegic. Surgical and rehabilitative intervention resulted in Journet regaining much of his function.

Two separate suits were filed in connection with this accident. Journet sued Mr. Mouton, Allstate Insurance Company, Aubrey, and the St. Martin Parish Sheriff's Office.[1] Paula Journet filed suit individually and on behalf of her minor children and named the same defendants.[2] Sheriff Theriot, Aubrey, and their insurer filed two separate motions for summary judgment. The first was filed in July 2008. The instant motion was filed in July 2011.

The defendants/appellees offered excerpts from the depositions of Journet, Paula Journet, Trooper Speyrer, and Aubrey in support of their motion. In opposition, Journet offered an unsworn letter from Richard A. Parent, Ph.D., President of Consultox, Ltd., in which he opined that Journet's test results did not indicate that he was impaired at the time of the accident. Journet also offered the unsworn report of Michael S. Gillen of National Collision Technologies, Inc., an accident reconstructionist, who posited a number of factual conclusions without expressing an opinion as to the ultimate issue in the case: who caused the accident. Additionally, he attached the full transcript of his deposition; certified medical records from Dr. Patrick A. Juneau III, M.D., a Lafayette neurosurgeon; the full transcript of Aubrey's deposition; and the full transcript of Paula Journet's deposition.

---

[1] This suit forms the basis for the appeal in the present matter.
[2] Paula Journet's suit forms the basis for the consolidated appeal under Docket Number 12-812.

The trial court heard the motion on August 23, 2011. Following argument, the trial court granted summary judgment in favor of defendants/appellees. The trial court refused to consider those items that were unsworn.

Journet appeals, arguing that the trial court erred in granting the summary judgment as the evidence demonstrates that Aubrey was traveling at an exceedingly slow speed on a well-traveled highway and that a genuine issue of material fact exists over whether Aubrey had his turn signal activated.

## ANALYSIS

An appellate court reviews a grant of summary judgment de novo, applying the same standards as would a trial court. *Vizzi v. Lafayette City-Parish Consol. Gov't*, 11-2648 (La. 7/2/12), 93 So.3d 1260. Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Summary judgment is favored and is designed to secure a just, speedy, and inexpensive determination of every action, except those in which summary judgment is disallowed. La.Code Civ.P. art. 966(A)(2). After adequate discovery or after a case is set for trial, a motion for summary judgment that shows there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law shall be granted. La.Code Civ.P. art. 966(C)(1). Summary judgments must be supported or opposed by affidavits made on personal knowledge and setting forth facts that would be admissible at trial, depositions, answers to interrogatories, and admissions on file. La.Code Civ.P. art. 966(B); La.Code Civ.P. art. 967(A).

"A 'genuine issue of material fact' is one over which reasonable minds could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.". *Smitko v. Gulf South Shrimp, Inc.,* 11-2566, p. 8 (La.7/2/12), 94 So.3d 750, 755. Facts are

material when their existence or non-existence potentially ensures or precludes plaintiff's recovery or determines the outcome of the litigation. *Id.*

We are called upon to decide the fault of the parties in this motor vehicle accident. Louisiana has long employed the duty-risk analysis in determining negligence actions. *See Dixie Drive It Yourself System v. Am. Beverage Co.*, 242 La. 471, 137 So.2d 298 (1962); *Hill v. Lundin & Assoc., Inc.* 260 La. 542, 256 So.2d 620 (1972). "To determine [the defendant]'s liability for this accident, the duty-risk analysis requires proof that: (1) the defendant had a duty to conform his conduct to a specific standard; 2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct [was] a legal cause of the plaintiff's injuries; and (5) proof of actual damages." *Toston v. Pardon*, 03-1747, pp. 14-15 (La. 4/23/04), 874 So. 2d 791, 801.

When analyzing a negligence case, particularly on summary judgment, we must bear in mind a few elementary principles. Whether a duty exists is a question of law. *Mundy v. Dep't of Health and Human Resources*, 620 So.2d 811 (La.1993). Whether the defendant breached that duty represents a factual determination. *Id.* The determination of whether the defendant's conduct was a cause-in-fact of the plaintiff's injuries is also a question of fact. *Rando v. Anco Insulations, Inc.*, 08-1163, 08-1169 (La. 5/22/09), 16 So.3d 1065. Therefore, summary judgment is appropriate only when reasonable minds could not disagree that the defendant did not breach his duty to the plaintiff or that the defendant's conduct was not a cause-in-fact of the plaintiff's injuries.

In the context of this case, a duty is created by statute to conform one's speed so as not to impede the normal and reasonable movement of traffic. La.R.S. 32:64(B). A driver is also obligated to signal his intent to turn by activating his

5

turn signal. La.R.S. 32:104(B). Lastly, a following driver is obligated to not follow another vehicle too closely. La.R.S. 32:81(A).

Aubrey testified that he had activated his turn signal. Journet testified that he did not see either brake lights or a turn signal. Paula Journet testified that she did see Aubrey's brake lights. Therefore, we *could* conclude that Journet was simply not paying adequate attention to see either the brake lights or turn signal. However, we cannot ignore Paula Journet's testimony about Aubrey's turn signal: "No, they never had no turn signal." This completely contradicts Aubrey's testimony. So an issue of fact does exist as to whether Aubrey employed his turn signal.

The questions still remains whether, assuming for the sake of argument that Aubrey breached his duty to use his signal, that breach was a cause-in-fact or a legal cause of the accident. We conclude it was not.

"Cause-in-fact" is generally a "but-for" analysis. If the plaintiff's injuries probably would not have been sustained absent the defendant's conduct, the conduct represents a cause-in-fact. *Roberts v. Benoit*, 605 So.2d 1032 (La.1991). When several causes were present, we utilize a "substantial factor" test. *Id*. We cannot conclude that Aubrey's conduct was not a cause-in-fact of the accident.

The question of whether Aubrey's conduct was a legal cause of the accident is another proposition entirely. Determining legal cause is a matter of deciding whether the scope of the duty imposed was intended to protect the plaintiff from the particular risk that befell him. *Id*. This involves a policy decision on the part of the court: Is there a relatively easy association between the duty breached and the risk plaintiff encountered? *Id*. Under these circumstances, we conclude that Aubrey's conduct was not the legal cause of the accident.

6

Journet testified that from hundreds of feet back, he recognized that Aubrey was traveling at a very slow rate of speed. Journet was traveling at approximately forty to forty-five miles per hour, and he estimated Aubrey to be traveling at between five and ten miles per hour. Journet, as the following vehicle, bore the responsibility to maintain a safe distance from Aubrey. Following vehicles are also tasked with a statutory duty, as found in La.R.S. 32:81(A), which (emphasis added), "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, *having due regard for the speed of such vehicle and the traffic upon and the condition of the highway*." Long ago, the Louisiana Supreme Court summarized the duties of the following driver:

> It is the duty of the driver operating an automobile, upon approaching another automobile from the rear while both cars are travelling in the same direction, to exercise a great deal of care. He must look out for the person ahead, realizing that that person is engaged in handling a high-powered machine requiring constant attention and that his lookout is forward and not backward. The driver of the rear car must keep a safe distance behind the front car and must have his machine under such control as to avoid injury to the car ahead or to his own car so long as the driver of the front car is driving in accordance with his rights.

*Burns v. Evans Cooperage Co.*, 208 La. 406, 419, 23 So. 2d 165, 169 (1945). More recently, we recognized the "duty of *great care*" imposed on the following motorist, except in the instance in which the lead motorist "negligently creates a hazard which the driver of the following vehicle cannot reasonably avoid." *La. Farm Bureau Mut. Ins. Co. v. Regal Ins. Co.*, 01-1446, pp. 2-3 (La.App. 3 Cir. 3/6/02), 809 So.2d 1280, 1283. We have long held that La.R.S. 32:64(B) does not apply to traffic in areas with residences. *See Chatagnier v. Allstate Ins. Co.*, 248 So.2d 590 (La.App. 3 Cir.1971).

The fact that Journet recognized the St. Martin Sheriff's vehicle several hundred feet in front of him, traveling at a very slow speed, not only should have

excited concern from Journet, it in fact did. The record indicates that he knew of this fact for a full sixty seconds. He testified that his intention was to fall in behind the sheriff's vehicle because he knew a strong possibility existed that he would be recognized and stopped. Nonetheless, he proceeded to pass two other motorists traveling slower than the forty miles per hour he was driving. Thus, Journet had all the information he needed to avoid this accident regardless of whether Aubrey signaled a turn. Accordingly, we are hard-pressed to even find a genuine issue regarding cause-in-fact. Certainly, there is no issue regarding legal cause. It is clear that Journet was not operating his vehicle with due regard for the speed of Aubrey, the traffic on the road, or the slick road conditions. These failures were the legal causes of the accident.

We affirm the trial court's judgment. All costs of this appeal are taxed to plaintiff/appellant, Sherman Journet.

**AFFIRMED.**